UNITED STATES of America,
Plaintiff-Appellee,

v.

Glen SATTERFIELD,
Defendant-Appellant.

No. 80–5503
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit B

May 14, 1981.

Albin E. Danell, Los Altos, Cal., for defendant-appellant.

Sonia Escobio O'Donnell, Asst. U. S. Atty. Miami, Fla., for plaintiff-appellee.

Before GODBOLD, Chief Judge, KRAVITCH and HATCHETT, Circuit Judges.

PER CURIAM:

Glen Satterfield appeals his conviction for knowingly and willfully making false declarations on a United States customs form in violation of 18 U.S.C. § 1001,[1] and knowingly and unlawfully transporting currency into the United States in excess of $5000 without filing the proper form in violation of 31 U.S.C. §§ 1101(b)[2] and 1058.[3] Satterfield assigns error to various phases of the trial including the suppression hearing. Finding no error, we affirm.

## FACTS

Satterfield arrived at Miami International Airport from Lima, Peru. While proceeding through customs, Satterfield presented his customs declaration form to a customs inspector manning the primary line. The inspector placed Satterfield's name into the Treasury Enforcement Communications System which indicated Satterfield was suspected of smuggling currency or narcotics. After receiving this information, the inspector referred Satterfield to customs inspector Johnson. Upon arriving at Inspector Johnson's station, Satterfield presented Johnson with his customs declaration form wherein he answered "no" to the question whether he had monetary instruments in his possession which exceeded $5000. Johnson thereafter examined Satterfield's luggage. While examining the luggage, Johnson observed that Satterfield's boots, "appeared a little bulky." After completing the baggage examination, Johnson requested Satterfield to accompany him and another customs inspector to a secondary search room. Once inside, the customs inspectors instructed Satterfield to empty his pockets and take off his boots and socks. The search uncovered $5000 in currency rolled up in Satterfield's sock and an additional $1000 in United States currency in Satterfield's pocket. The agents later found $2000 in Satterfield's luggage. Upon discovering the money, Johnson contacted Alexander Nualart, special agent, Department of the Treasury, United States Customs Department. By telephone, Johnson explained the circumstances to Nualart and

---

1. 18 U.S.C. § 1001 provides:

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

2. 31 U.S.C. § 1101(b) provides, in pertinent part:

(b) Reports required under this section shall be filed at such times and places, and may contain much of the following information and any additional information, in such detail, as the Secretary may require:

(1) The legal capacity in which the person filing the report is acting with respect to the monetary instruments transported.

(2) The origin, destination, and route of the transportation.

(3) Where the monetary instruments are not legally and beneficially owned by the person transporting the same, or are transported for any purpose other than the use in his own behalf of the person transporting the same, the identities of the person from whom the monetary instruments are received, or to whom they are to be delivered, or both.

(4) The amount and types of monetary instruments transported.

3. 31 U.S.C. § 1058 provides, in pertinent part:

Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000, or imprisoned not more than one year, or both.

requested Nualart's presence. Johnson, White, and Satterfield waited in the secondary search room during the one-and-a-half hours that it took for Nualart to arrive. According to Johnson's testimony, no questions were asked of Satterfield during this period. When Nualart arrived, he read Satterfield his rights and began to question him. During this questioning, Satterfield made the incriminating statements about which he complains.

Before trial, Satterfield moved to suppress his incriminating statements. The trial court denied his motion, and a jury trial resulted in Satterfield's conviction on both counts of the two-count indictment.

## ISSUES

The issues raised on this appeal are: (1) whether the trial court erred in admitting evidence regarding a previous occurrence in San Francisco in which Satterfield and his wife were found to be entering the United States with $16,000 without declaring the currency; (2) whether the trial court erred in denying Satterfield's motion to continue the trial date; (3) whether the trial court properly instructed the jury on the law governing Satterfield's ignorance of the law; and (4) whether the trial court erred in denying Satterfield's motion to suppress.

## I.

■ Section 1101(b), 31 U.S.C., requires any person entering this country to report on a custom's declaration form monetary instruments in their possession in excess of $5000. Title 31 U.S.C., section 1058, makes it a crime to willfully violate 31 U.S.C. § 1101.

At trial, Satterfield proceeded on the theory that he was unaware of the reporting requirement of section 1101(b). He therefore argued that he was unable to willfully and knowingly violate sections 1101(b) and 1058. The government, in an attempt to

prove that Satterfield was aware of the reporting requirement, introduced evidence that eight months prior to the incident in question, Satterfield and his wife went through a secondary search in San Francisco at which time Satterfield was informed that he was required to report all currency in his possession in excess of $5000. Satterfield here argues that the trial court committed prejudicial error when it allowed introduction of this evidence regarding his previous entry into the United States at San Francisco. We disagree.

Rule 404(b), Fed.R.Evid.,[4] permits the introduction of evidence of other crimes, wrongs, or acts to show intent. In *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), this court construed Rule 404(b). The court stated:

> What the rule calls for is essentially a two-step test. First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of Rule 403.

*Beechum*, at 911. The first step of the *Beechum* test was satisfied in this case. It is clear that Satterfield's intent and not his character was at issue in this case. Satterfield testified that he was unaware of the reporting requirement. He also testified that he did not read the customs declaration form and consequently did not know what, it anything, he was required to report on the form. Thus, the evidence introduced by the government was relevant to show that Satterfield knew of the reporting requirement and intended to violate the statute by failing to report currency in his possession in excess of $5000. As stated by the court in *Beechum*:

> conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

**4.** Rule 404(b), Fed.R.Evid. provides, in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in

Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offenses derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.

*Beechum*, at 911. We find that the trial court properly admitted the evidence introduced by the government to prove Satterfield's knowledge of the reporting requirement and intent to willfully violate the statute by failing to report currency in his possession in excess of $5000.

The second prong of the *Beechum* test is similarly met. As stated by the *Beechum* Court:

In measuring the probative value of the evidence, the judge should consider the overall similarity of the extrinsic charged offenses. If they are dissimilar except for the common element of intent, the extrinsic offense may have little probative value to counterbalance the inherent prejudice of this type of evidence. Of course, equivalence of the elements of the charge and extrinsic offenses is not required. But the probative value of the extrinsic offense correlates positively with its likeness to the offense charged. Whether the extrinsic offense is sufficiently similar in its physical elements so that its probative value is not substantially outweighed by its prejudice is a matter within the sound discretion of the trial judge. The judge should also consider how much time separates the extrinsic and charged offenses: temporal remoteness depreciates the probity extrinsic offense.

*Beechum*, at 915 (citations omitted).

In this case, a customs agent testified that eight months prior to the incident in question, he stopped Satterfield as he proceeded through customs in the San Francisco airport. At that time, Satterfield had unreported currency in his possession in excess of $5000. The extrinsic offense is the exact offense charged in this case, and it occurred only eight months before the offense in this case. Under these circumstances, the trial court properly exercised its discretion to admit into evidence the San Francisco extrinsic offense.

## II.

Satterfield next argues that the trial court abused its discretion and committed prejudicial error when it denied his motion to continue the trial date. He asserts that the time between the indictment, March 12, 1980, and the scheduled trial date, May 5, 1980, was insufficient to permit him to adequately prepare for trial.

A motion for continuance is a matter "addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless there is a showing that there has been an abuse of that discretion." *United States v. Uptain*, 531 F.2d 1281, 1285 (5th Cir. 1976). "This issue must be decided on a case-by-case basis in light of the circumstances presented, particularly the reason for continuance presented to the trial court at the time the request is denied." *Uptain*, at 1285–86. In assessing claims of inadequate preparation time, the following factors are relevant:

[t]he quantum of time available for preparation, the likelihood of prejudice from denial, the accused's role in shortening the effective preparation time, the degree of complexity of the case, . . . the availability of discovery from the prosecution . . . the adequacy of the defense actually provided at trial, the skill and experience of the attorney, [and] any pre-appointment or pre-retention experience of the attorney with the accused or the alleged crime.

*Uptain*, at 1286 (footnotes omitted).

After reviewing the record in light of the above factors, we find that Satterfield's claim of inadequate trial preparation time is without merit. Although the two-month period between indictment and trial may have imposed time pressures upon Satterfield, the case was relatively simple, having

been based solely upon the testimony of four customs' agents whose grand jury testimony was available to Satterfield during the period before trial. Moreover, we agree with the government that Satterfield played a role in shortening the effective preparation time by being out of town on "pressing business." Additionally, Satterfield does not point out, nor have we found, any prejudice resulting from the denial of his motion for continuance. As stated by the government, Satterfield's counsel filed a motion to suppress which was accompanied by a memorandum of law in support of that motion. Satterfield was adequately represented at the suppression hearing and at his trial. Under these circumstances, the trial court did not abuse its discretion in denying the motion for continuance.

### III.

▮ Satterfield complains that the trial court committed reversible error when it refused to give a requested instruction on Satterfield's ignorance of the law, choosing instead to give an instruction which covered the substance of the instruction requested by Satterfield.

Satterfield requested the trial court to instruct the jury regarding ignorance of the law by giving the following instruction:

> If you find that the defendant was ignorant of the law requiring a report to be filed when transporting into the United States over five thousand ($5000) dollars then you must acquit the defendant of the crimes charged in Counts I and II of the indictment. If after considering all the evidence of the case you have reasonable doubt as to whether the defendant had knowledge of the existing requirements as charged in Counts I and II of the indictment, you must acquit the defendant of these counts.

The trial court gave the following charge:

> [I]f a defendant is ignorant of a law requiring a report, as an example in reference to transportation of money, then he cannot be found guilty.
>
> That if after considering all of the evidence, you have a reasonable doubt as to

whether or not a defendant knew of the reporting requirements, then that would mean that the government had not proven specific intent or willfulness beyond every reasonable doubt.

"A defendant is entitled to a charge which precisely and specifically, rather than merely, generally, or abstractly, points to the theory of his defense." *United States v. Lewis,* 592 F.2d 1282, 1286 (5th Cir.1979) (*quoting United States v. Wolfson,* 573 F.2d 216, 221 (5th Cir.1978)). Reviewing the charge requested by Satterfield and the one given by the trial court, we find that the charge given in the instant case complied with the *Wolfson* standard.

### IV.

Satterfield finally argues that the trial court erred in denying his motion to suppress. Satterfield's argument can be divided into two parts. First, he argues that the incriminating statements about which he complains were taken in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Second, he argues that even if his incriminating statements were not obtained in violation of *Miranda,* waiver of his *Miranda* rights was involuntary.

▮ With regard to the first prong of Satterfield's argument, he testified at the suppression hearing that he made the incriminating statements in response to questions posed by agents Johnson and White before agent Nualart arrived. Agents Johnson and White testified at the suppression hearing that they asked no questions of Satterfield prior to Nualart's arrival. The trial court, in denying Satterfield's motion to suppress, obviously found credible agents Johnson and White's testimony. A trial court's "credibility choices are clearly within the province of the finder of fact. [Thus] ... findings of fact by the district court on a motion to suppress should not be disturbed on appeal unless clearly erroneous." *United States v. Kreczmer,* 636 F.2d 108, 110 (5th Cir.1981).

We find ample support in the record to sustain the trial court's finding that Satterfield was not interrogated prior to Nua-

lart's arrival. The trial court's finding was not clearly erroneous.

 The second prong of Satterfield's argument asserts that waiver of his *Miranda* rights was involuntary. The question of involuntariness is to be determined from the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 31 L.Ed.2d 854 (1972). In order to find Satterfield's confession voluntary, "we must conclude that he made an independent and informed choice of his own free will, possessing the capability to do so, his will not being overborne by the pressures and circumstances swirling around him." *Jurek v. Estelle* 623 F.2d 929, 937 (5th Cir.1980) (en banc). We note, however, that the government has the burden of proving the waiver was voluntary. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

After reviewing the record, we conclude that Satterfield voluntarily waived his *Miranda* rights. After agent Nualart arrived, he informed Satterfield of his rights and asked Satterfield whether he understood them. Satterfield responded that he did. Thereafter, Satterfield made the incriminating statements about which he complains. Satterfield later signed a *Miranda* rights warning card also indicating that he fully understood his rights. Satterfield's signing of the waiver form, though not conclusive, is "usually strong proof" of the voluntariness of the waiver. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979).

The record indicates that Satterfield was perfectly capable of understanding the warnings as explained to him. Satterfield has an eleventh grade education, and owns and operates, together with his brother, his own business. In our view, these factors taken together support the trial court's ruling denying Satterfield's motion to suppress.

## CONCLUSION

We hold that the trial court did not err in: (1) admitting evidence of an extrinsic offense; (2) denying Satterfield's motion for continuance; (3) instructing the jury on the law governing ignorance of the law; and (4) denying Satterfield's motion to suppress.

AFFIRMED.