**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Rolando ANDEREZ, Defendant-Appellee.**

**No. 80–5720.**

United States Court of Appeals,
Fifth Circuit.*
Unit B

Nov. 16, 1981.

Rehearing and Rehearing En Banc Denied
Dec. 18, 1981.

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

Peter D. Isakoff, Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Paul Morris, Miami, Fla., for defendant-appellee.

Before RONEY, VANCE and RANDALL, Circuit Judges.

VANCE, Circuit Judge:

Appellee Rolando Anderez was charged in a two count indictment with the violation of the misdemeanor provisions of the Currency and Foreign Transactions Reporting Act (Reporting Act), 31 U.S.C. §§ 1101,[1] 1058,[2] and the felony violation of the false statements statute, 18 U.S.C. § 1001.[3] A jury convicted Anderez of both counts. The district court, however, granted Anderez' posttrial motion for acquittal on the felony false official statements count. Anderez was fined and given a suspended sentence on the misdemeanor conviction. Challenging the acquittal under the false statements statute, the United States brings this appeal.[4]

On January 18, 1980 Anderez arrived at Miami International Airport following a week-long stay in Lima, Peru. He went to the customs inspection point and presented a partially completed customs declaration form[5] to Customs Inspector Nerren. Nerren examined the form and returned it to Anderez, directing him to complete the form and sign it. On the form was a customs currency question, which asked whether the person entering the United States

---

1. Title 31 U.S.C. § 1101 provides in pertinent part:

   (a) Except as provided in subsection (c) of this section, whoever, whether as principal, agent, or bailee, or by an agent or bailee, knowingly—

   (1) transports or causes to be transported monetary instruments—

   . . . .

   (B) to any place within the United States from or through any place outside the United States . . .

   . . . .

   in an amount exceeding $5,000 on any one occasion shall file a report or reports in accordance with subsection (b) of this section. Under this provision a person must file a report (Form 4790) when he brings more than $5,000 into the country. 31 C.F.R. § 103.23(a) (1980).

2. Title 31 U.S.C. § 1058 provides:

   Whoever willfully violates any provision of this chapter or any regulation under this chapter shall be fined not more than $1,000,

   or imprisoned not more than one year, or both.

3. Title 18 U.S.C. § 1001 provides:

   Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

4. Anderez has not appealed his conviction under the Reporting Act, 31 U.S.C. §§ 1101, 1058.

5. Customs Form 6059–B. Anderez completed a Spanish language form, so it is clear he was able to understand the nature of the information solicited by the government.

was carrying more than $5,000 in currency.[6] Anderez had not answered this question initially, but he checked the "no" box after being told to complete the form.

Nerren then began to inspect Anderez' luggage. He again asked Anderez whether he was carrying more than $5,000, and stated that it was not illegal to bring more money than that into the country, although it would necessitate completing another form. Anderez stated that he had only $1,800 with him. When Nerren returned to the inspection of Anderez' baggage he noticed several suspicious bulges around Anderez' waist. Anderez was taken to a personal search room where four packages of money containing $22,000 were found secreted on his person. After receiving *Miranda* warnings Anderez stated that he had brought the money into the country as a favor to a friend who wished to avoid taxes on it.

A jury convicted Anderez on both counts of the indictment. The district court, however, entered a judgment of acquittal on the felony count charging Anderez under the false statements statute, 18 U.S.C. § 1001. *See United States v. Anderez*, 502 F.Supp. 67 (S.D.Fla.1980). The district court concluded that because Congress had determined to punish Anderez' conduct as a misdemeanor under 31 U.S.C. §§ 1101, 1058, it did not intend to create felony liability for the same conduct under the older, more general section 1001. The district court stated that there was nothing in the legislative history to indicate congressional intent to allow overlapping punishment under the different statutes. The court also stated that, because Congress had provided for multiple punishment in several other instances by explicitly incorporating the false statements statute into the newer laws, Title 31 would have specifically provided for cumulative penalties under that statute had Congress intended to allow double punishment. On appeal the government contends

that the district court incorrectly concluded that Anderez could not be convicted under both counts. We agree and accordingly reverse the judgment of the district court.

## I

In examining the scope of the different statutes under which Anderez was charged, the district court found the legislative history to be ambiguous concerning the question of multiple penalties. Consequently, it applied the rule of lenity to construe the Reporting Act as having supplanted the provisions of section 1001. In doing so, the court ignored a fundamental tenet of statutory construction. Our starting point in interpreting statutes must be the language of the statutes themselves. Absent "clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." *Albernaz v. United States*, 450 U.S. 333, 336, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981) (quoting *Consumers Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 109, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Anderez was charged with two separate offenses contained in two distinct acts. Each provision is unambiguous on its face and imposes punishment for the violation of its distinct terms. There is nothing in either provision to suggest that its penal terms must be exclusive. Indeed, the Reporting Act suggests that Congress intended that the provisions of the false statements statute serve to complement the penal provisions of the Reporting Act. Title 31 U.S.C. § 1052(k) makes it clear that the failure to report currency may also result in a violation of the false statements statute:

For the purposes of section 1001 of Title 18 the contents of reports required under any provision of this chapter are statements and representations in matters within the jurisdiction of an agency of the United States.

---

**6.** The English version of question 11 of Form 6059–B is:

Are you or any family member carrying over $5,000.00 in monetary instruments such as

coin, currency, traveler's checks, money orders, or negotiable instruments in bearer form? *(If yes, you must file a report on Form 4790, as required by law.)*

Given the clarity with which Congress spoke, only the starkest manifestation of contrary intent in the legislative history of the two acts would lead us to find that sections 1101 and 1058 are the sole source of punishment for Anderez' conduct. *See Albernaz v. United States,* 449 U.S. at 340, 101 S.Ct. at 1143. That clear manifestation is absent from the legislative record. Section 1001 is a broad statute designed to reach material misrepresentations of any sort that would pervert the authorized functions of government. There is nothing to suggest that the reach of section 1001 should be tempered by the existence of other statutes. *See United States v. Gilliland,* 312 U.S. 86, 93, 61 S.Ct. 518, 522, 85 L.Ed. 598 (1941). Similarly, the legislative history of the Reporting Act fails to disclose any intent to make the penal provisions of the Act exclusive. The district court makes much of a short exchange between Senator Proxmire and a former United States Attorney during the hearings on the Reporting Act.[7] The cited passage, however, merely states that sections 1101 and 1058 will aid in controlling illegal currency shipments. There is nothing to suggest that the Reporting Act must necessarily be the sole basis for prosecuting persons who mislead customs inspectors. Indeed, throughout the legislative history there is nothing to suggest that a violation of the Reporting Act cannot also amount to a violation of 18 U.S.C. § 1001.[8]

The district court also suggests that it would be illogical for Congress to provide a specific misdemeanor penalty for a violation of the Reporting Act, yet inevitably allow for felony punishment under 18 U.S.C. § 1001.˙ This conclusion is contrary to precedent as well as flawed in logic. First, courts have consistently read section 1001 broadly and allowed for prosecution under its terms even when a defendant could have been prosecuted under a more specific misdemeanor provision with lesser penalties. *See United States v. Gilliland,* 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (felony prosecution under section 1001 not precluded by Hot Oil Act reporting provision providing for less severe penalty); *United States v. Carter,* 526 F.2d 1276 (5th Cir. 1976) (heavier penalties of section 1001 may be imposed for conduct also punishable under 15 U.S.C. § 645(a)); *United States v. Chakmakis,* 449 F.2d 315 (5th Cir. 1971) (section 1001 may be imposed instead of misdemeanor provisions of 42 U.S.C. § 408(c)).[9] Second, it is quite logical for Congress to have decided that section 1001 should supplement the Reporting Act provisions on occasion. Each statute is aimed at a slightly different form of misconduct—lying to a federal officer is not the same as failing to file a currency report—and Congress could easily have determined that two provisions should operate independently to chill certain conduct even if they overlapped in many instances.

---

**7.** Senator Proxmire: How would the pending legislation help in controlling these illegal currency shipments?

Mr. Morgenthau: I think Chapter 2 of Title II [now 31 U.S.C. § 1101] requires that these shipments be reported, and if they are not, you can prosecute for violation of that section. This would be a tremendous help. *Hearings on S. 3678 and H.R. 15073 before the Senate Subcommittee on Financial Institutions of the Senate Committee on Banking and Currency,* 91st Cong., 2d Sess. 258 (1970)

. . . .

*United States v. Anderez,* 502 F.Supp. 67, 70 (S.D.Fla.1980) (emphasis by district court omitted).

**8.** *See* H.R.Rep. No. 91–975, 91st Cong., 2d Sess. (1970) *and* Conf.Rep. No. 91–1587, 91st Cong., 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News 4394.

**9.** *See also United States v. Batchelder,* 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755 (1979):

This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. See *United States v. Beacon Brass Co.,* 344 U.S. 43, 45–46, 73 S.Ct. 77, 79, 97 L.Ed. 61 (1952); *Rosenberg v. United States,* 346 U.S. 273, 294, 73 S.Ct. 1152, 1163, 97 L.Ed. 1607 (1953) (Clark, J., concurring) (opinion joined by five Members of the Court); *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962); *SEC v. National Securities, Inc.,* 393 U.S. 453, 468, 89 S.Ct. 564, 572, 21 L.Ed.2d 668 (1969); *United States v. Naftalin* [441 U.S. 768, 777, 99 S.Ct. 2077, 2084, 60 L.Ed.2d 624 (1979)].

In an effort to avoid the plain language of the statutes as well as an unsympathetic legislative history Anderez invokes two maxims of criminal law construction. Those shibboleths are unavailing here. The first, the proposition that specific statutes must be given precedence over general ones, is refuted by the broad construction this court and others have given section 1001. *See, e. g., United States v. Gilliland,* 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598; *United States v. Carter,* 526 F.2d 1276; *United States v. Chakmakis,* 449 F.2d 315. The second, the rule of lenity,[10] is inappropriate in cases where there is no statutory ambiguity to resolve. *See, e. g., Barrett v. United States,* 423 U.S. 212, 217, 96 S.Ct. 498, 501, 46 L.Ed.2d 450 (1976). Congress has spoken clearly in this case, and when "Congress has manifested its intention, [the courts] may not manufacture ambiguity in order to defeat that intent." *United States v. Davis,* 656 F.2d 153, 158 (5th Cir. 1981)

(quoting *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980)). While some may disagree with the decision to allow punishment for orally lying to a government official as well as for not complying with customs regulations, this is the sort of policy dispute that must be left in the legislative arena. Absent constitutional infirmities in the sentencing provision of these two acts [11] our court must enforce Congress' intent to punish each offense independently.[12] We hold that Anderez may be convicted under both 18 U.S.C. § 1001 and 31 U.S.C. §§ 1101, 1058.[13]

## II

In the alternative, Anderez argues that the false statements charge should be dismissed pursuant to the well developed exculpatory no doctrine. Citing *United States v. Schnaiderman,* 568 F.2d 1208 (5th Cir. 1978), and *United States v. Granda,* 565 F.2d 922 (5th Cir. 1978), Anderez argues

10. This policy of lenity means that the [courts] will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.
*Ladner v. United States,* 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958), *quoted in United States v. Davis,* 656 F.2d 153, 158 (5th Cir. 1981); *see Dunn v. United States,* 442 U.S. 100, 112, 99 S.Ct. 2190, 2197, 60 L.Ed.2d 743 (1979).

11. Anderez does not argue that punishment under the false statements statute and the Reporting Act would violate the double jeopardy clause of the fifth amendment. U.S.Const. amend. V. That argument has been foreclosed by two recent decisions of the Supreme Court. *See Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 688–89, 100 S.Ct. 1432, 1436–1437, 63 L.Ed.2d 715 (1980).

12. There is no need to apply the test of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in this case because it is clear that Congress intended to punish two separate offenses even though they may both result from the same transaction. Were we to apply *Blockburger,* however, we would reach the same result. In that case the Supreme Court stated:
A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not,

an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. *Id.* at 304, 52 S.Ct. at 182 (citation omitted). To be convicted under 31 U.S.C. §§ 1101, 1058, the defendant merely has to fail to file Form 4790. To be convicted under 18 U.S.C. § 1001 the defendant must have materially misled the governmental official, orally or in writing.

13. Our decision is in accord with the conclusions reached by another panel of this court and by the ninth circuit. Although neither court confronted the issue squarely, each upheld convictions under 18 U.S.C. § 1001 and 31 U.S.C. §§ 1101, 1058. *See United States v. Satterfield,* 644 F.2d 1092 (5th Cir. 1981); *United States v. Moore,* 638 F.2d 1171 (9th Cir. 1980). The second circuit also apparently allows prosecution under both statutes. In *United States v. Gomez Londono,* 553 F.2d 805 (2d Cir. 1977), that court reversed the district court's suppression order in a case where the defendant had been charged under both the Reporting Act and the false statements statute, but left the indictment intact. In an unreported opinion the second circuit subsequently affirmed the defendant's conviction. *United States v. Gomez Londono,* 580 F.2d 1046 (2d Cir. 1978); *see United States v. Pereira,* 463 F.Supp. 481 (E.D.N.Y.1978) (district court denied motion to dismiss indictment charging violation of 18 U.S.C. § 1001 and 31 U.S.C. §§ 1101, 1058).

that, because he was not told by Nerren that it was legal to bring more than $5,000 into the country *before* he completed the customs form improperly and lied to Nerren about the currency he carried, his response falls within the exception that this court has grafted onto section 1001.

■ The exculpatory no doctrine developed because this court believed that Congress intended section 1001 to punish only positive false statements that would pervert governmental functions. *See Paternostro v. United States*, 311 F.2d 298, 301–05 (5th Cir. 1962). In addition, this court was motivated by a "latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment." *United States v. Lambert*, 501 F.2d 943, 946 n.4 (5th Cir. 1974). Consequently, we have held that section 1001 may not be used to punish people who make negative false statements to government investigators in an effort to exculpate themselves from an act they believe to be illegal. This doctrine was applied to the fact pattern present in this case in *Schnaiderman* and *Granda.* In both of those cases we held that, unless the individual knows it is permissible to bring more than $5,000 into the country, a lie to customs agents to avoid expected retribution under currency laws will not lead to section 1001 punishment. *See also United States v. Warren*, 612 F.2d 887, 889–90 (5th Cir.) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). Unless customs officials disabuse travelers of the belief that bringing currency into the country is illegal, solicitude for fifth amendment values prevents us from attaching section 1001 liability to this sort of conduct. *E. g., United States v. Schnaiderman*, 568 F.2d at 1214 & n.12.

■ Anderez argues that the timing of Inspector Nerren's statement to the effect that it was legal to bring $24,000 into the country makes the exculpatory no doctrine applicable. We disagree. The false state-

ments may have occurred slightly before Nerren's assurances, but the two were part of a single exchange between Nerren and Anderez. Once informed that he could bring more than $5,000 into the country Anderez easily could have recanted and told the truth. He could have avoided liability by changing his answers on the original customs form and completing the secondary currency form.[14] Because Anderez chose to continue in his falsehood after being told that the act he sought to conceal was not illegal the exculpatory no doctrine is inapplicable.

Because we find that the district court erred in entering a judgment of acquittal under section 1001 and that the exculpatory no doctrine is inapplicable, we reverse the judgment below and remand for the felony conviction to be reinstated.

REVERSED AND REMANDED.

**14.** *See* 19 C.F.R. § 148.16 (1980) (individual entering country may amend Form 6059–B at any point before an undisclosed item is found during customs inspection).

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.