**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Lewis PALZER, Defendant-Appellant.**

**No. 83–5091.**

United States Court of Appeals,
Eleventh Circuit.

Nov. 5, 1984.

---

Joseph Beeler, Miami, Fla., for defendant-appellant.

Stanley Marcus, U.S. Atty., Chris K. Gober, Linda Collins-Hertz, David O. Leiwant, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

**1352**

Before HILL and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

■ Lewis B. Palzer appeals from his convictions under both counts of an indictment charging him with making a material false statement in a matter within the jurisdiction of the Customs Service, in violation of 18 U.S.C. § 1001, and willfully failing to report that he was bringing more than $5,000 in currency into the United States, in violation of 31 U.S.C. §§ 1101(a)(1)(B) & 1058; 31 C.F.R. §§ 103.23, 103.49(a).[1] The government concedes that reversible error occurred in the trial below relating to the

1. The statutory sections were revised and recodified at 31 U.S.C. §§ 5316(a) & 5322 on September 13, 1982, subsequent to the August 18, 1982 indictment in the instant case.

2. The government initially confessed error and filed a motion in this court for a remand to the district court for retrial. An administrative panel of this court carried that motion with the case, noting that certain of Palzer's arguments on appeal, apart from the jury polling problem which required a new trial, might entitle Palzer to acquittal on the charges against him. *United States v. Palzer*, 731 F.2d 1484 (11th Cir.1984). At the court's request, both parties filed supplemental briefs. In the government's brief, it now concedes that Palzer's claims merit consideration by this court and that its prior motion to dismiss this appeal has been rendered moot. We agree with the government's position, *see infra* note 4, and accordingly, we deny the motion to dismiss the appeal.

In addition, the government has filed a motion to correct a minor technical error in the previous opinion by the administrative panel. We grant the motion and delete the following sentences from page 1485 of the administrative panel's opinion:

Upon discovering that the verdict was not unanimous, the district court told the jurors to return to deliberations and that it must render a unanimous verdict. The jury then returned, and rendered its guilty verdict. Appellant filed his notice of appeal, alleging several bases for reversal of his conviction, one of which was that the district court erred in sending the jury back to the jury room and instructing them to return a unanimous verdict.

We substitute the following:

Upon discovering that the verdict was not unanimous, the court polled the jury for a second time before sending the jury back for

polling of jurors.[2] Palzer argues that a remand to the district court for retrial is inappropriate and we should order his acquittal because: (1) retrial on Count I (false statement) of the indictment would violate the Double Jeopardy Clause; and (2) retrial on Count II (failure to report importation of more than $5,000) of the indictment should be precluded because Customs Form 4790 that he failed to fill out represents an administrative rule that was improperly promulgated and therefore void, and thus it cannot be the basis of a criminal conviction against Palzer.[3] Both parties agree that Palzer's claims are properly before the court at this time and we will consider the merits of both.[4]

further deliberations, which the government concedes was in violation of *United States v. Spitz*, 696 F.2d 916, 917 (11th Cir.1983).

3. Palzer also argues that the government violated his due process rights by misleading and confusing him about the proper state of the law. *See infra* notes 5 & 12. His argument stems from the fact that he was presented with two slightly different versions of Customs Form 6059–B on two different travels. This issue is closely related to Palzer's insufficiency of the evidence challenge to his retrial under Count I of the indictment. We address and reject his due process argument, *infra* at note 12, in the course of discussing the sufficiency issue.

4. In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Court held that double jeopardy principles barred the retrial of a defendant whose conviction was reversed by the appellate court on the basis of insufficient evidence. As Justice Brennan observed in his concurrence in *Justices of Boston Municipal Court v. Lydon*, —— U.S. ——, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984):

[W]hen a defendant challenging his conviction on appeal contends both that the trial was infected by error and that the evidence was constitutionally insufficient, the Court may not, consistent with the rule of *Burks v. United States*, ignore the sufficiency claim, reverse on grounds of trial error, and remand for retrial. Because the first trial has plainly ended, "retrial is foreclosed by the Double Jeopardy Clause if the evidence fails to satisfy the [constitutional standard for sufficiency]. Hence the [sufficiency issue] cannot be avoided; if retrial is to be had, the evidence must be found to be legally sufficient as a matter of federal law to sustain the jury verdict." *Tibbs v. Florida*, 457 U.S. 31, 51 [102 S.Ct. 2211,

## FACTS

Palzer flew to Miami, Florida, from Grand Cayman, on August 4, 1982. En route to Miami, he was furnished with Customs Declaration Form 6059–B. In filling out that form, he checked the box marked "no" in response to question 11, which asked whether he or any member of his family was carrying over $5,000 in monetary instruments such as coins, currency, etc.[5]

Upon disembarking from the plane at the Miami Airport, Palzer proceeded to the Customs enclosure for processing. Signs, posted throughout the Customs area, specifically inform travelers that if they are bringing more than $5,000 in monetary instruments into the country, they must fill out Customs Form 4790 and report the fact that they are carrying the money.[6] Prospero Ellis, a roving Customs Inspector on duty in the Miami Airport, spotted Palzer and thought that he might have something attached to his legs underneath his pants. Ellis asked Palzer to proceed to a second inspection line. Palzer became quite nervous, and during questioning tried to obstruct Ellis' view of the noticeable bulges in his pants legs and crotch area by covering them with his hands.

Palzer ultimately agreed to accompany Ellis and Customs Inspector Ryan to a separate room and consented to a pat-down search. After the search, Palzer stated: "What's the use," and produced $200,000 in stacks of $100 bills that he had taped to his legs and stuffed into his underwear. After some questioning on why he had failed to report the money, but without receiving instructions from the Customs officials that it was not illegal to transport more than $5,000 into the country, Palzer stated, according to the testimony of a Customs inspector: "What's the big deal anyway? ... [G]ive me the form right now and I'll fill it out."

Palzer was subsequently indicted, tried, and convicted on the two counts previously mentioned.

## DISCUSSION

As noted, the government has conceded that a jury polling problem requires rever-

---

2223, 72 L.Ed.2d 652] (1982) (White, J., dissenting). *See id.* at 45 [102 S.Ct. at 2220] (majority opinion) (noting that consideration of evidentiary sufficiency before ordering retrial is part of state appellate court's "obligation to enforce applicable state and federal laws").
*Id.* —— U.S. at ——–——, 104 S.Ct. at 1820–21, 80 L.Ed.2d at 333–34.

Palzer's arguments relating to the sufficiency of the evidence on Count I, and the alleged due process violation, *see supra* note 3 and *infra* note 12, would both entitle him to a judgment of acquittal on Count I if successful. Because retrial would then violate double jeopardy, we are compelled to address Palzer's claims on these issues.

Appropriate relief on Palzer's claim relating to Count II would be to dismiss the indictment for failure to state an offense. In such circumstances, double jeopardy would not bar retrial on a subsequent indictment that did state an offense. *See United States v. Hayes,* 676 F.2d 1359 (11th Cir.1982), *cert. denied,* 459 U.S. 1040, 103 S.Ct. 455, 74 L.Ed.2d 608 (1983). However, it would be highly impractical and a waste of judicial resources to remand this case for retrial without deciding whether Count II of the indictment states a valid claim. For this reason, and because the parties urge us to consider the validity of Count II in connection with the remain-

ing issues on appeal, which we must consider, we also address Palzer's challenge to the validity of his prosecution for failure to fill out Customs Form 4790.

5. On the 1977 version of Customs Form 4790, question 11 reads:

Are you or any family member carrying over $5,000 in monetary instruments such as coin, currency, travelers checks, money orders, or negotiable instruments in bearer form: (If yes, you must file a report on Form 4790, as required by law).

The form then provides two boxes, one marked "yes" and the other marked "no." This is the version of Form 6059–B that Palzer filled out on the August 4 flight. A later version of Customs Form 6059–B, drafted in 1978, includes the following addition to the above-quoted language:

Note: It is not illegal to transport over $5,000 in monetary instruments; however, it must be reported.

We discuss the difference between the two versions of Form 6059–B and the relevance of that difference in the instant case more fully in note 12, *infra.*

6. The signs, however, did not contain the caveat expressed in the 1978 version of Customs Form 6059–B, *see supra* note 5, that it is not illegal to transport more than $5,000 into the country.

sal of Palzer's convictions. Nevertheless we must consider Palzer's claim that he is entitled to acquittal on Count I, and as a matter of judicial economy we also consider Palzer's challenge to his conviction on Count II.

With regard to Count I of the indictment, we find that there was sufficient evidence introduced below to support Palzer's conviction for making a material false statement in a matter within the jurisdiction of the Customs Department of the United States. We therefore conclude that the government may, if it wishes, retry Palzer under Count I of the indictment.

With regard to Count II of the indictment and Palzer's claim that Customs Form 4790 was improperly promulgated, and therefore void, we find that the alleged invalidity of the form is not implicated in the offense charged under Count II. Because we conclude that the indictment sufficiently states a valid offense, the government is free to retry Palzer under this count.

### A. *Material False Statement Issue*

Palzer argues that the government cannot retry him under Count I of the indictment because the evidence introduced below was insufficient to support his conviction. Although we agree with Palzer's assertion that double jeopardy would bar his reprosecution under Count I of the indictment if the government had failed to introduce sufficient evidence on this count in the trial below, *see supra* note 4, we conclude that the government's evidence was sufficient.

Count I of the indictment charged Palzer with making a material false statement on Customs Form 6059–B, when he answered

"no" to question 11, and thus represented that he was not carrying more than $5,000. His actions were clearly in violation of the language of the statute charged in the indictment: 18 U.S.C. § 1001.[7] However, Palzer argues that under judicial limitations on the operation of § 1001, in particular the "exculpatory no" doctrine, he was entitled to a judgment of acquittal.

The "exculpatory no" doctrine, as it applies to prosecutions under 18 U.S.C. § 1001, and in particular to a defendant's alleged false representation on Customs Form 6059–B, was well-explained by this court in *United States v. Anderez*, 661 F.2d 404 (5th Cir.1981) (Unit B):[8]

The exculpatory no doctrine developed because this court believed that Congress intended section 1001 to punish only positive false statements that would pervert governmental functions. *See Paternostro v. United States*, 311 F.2d 298, 201–095 (5th Cir.1962). In addition, this court was motivated by a "latent distaste for an application of the statute that is uncomfortably close to the Fifth Amendment." *United States v. Lambert*, 501 F.2d 943, 946 n. 4 (5th Cir.1974). Consequently, we have held that section 1001 may not be used to punish people who make negative false statements to government investigators in an effort to exculpate themselves from an act they believe to be illegal. This doctrine was applied to the fact pattern present in this case in *Schnaiderman [United States v. Schnaiderman*, 568 F.2d 1208 (5th Cir. 1978)] and *Granda [United States v. Granda*, 565 F.2d 922 (5th Cir.1978)]. In both of those cases we held that, unless the individual knows it is permissible to bring more than $5,000 into the

---

7. That section provides in pertinent part:
 Whoever, in any manner within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up ... a material fact, or makes a false ... representation ... shall be fined not more than $10,000 or imprisoned not more than five years, or both.
 The district court properly found that Palzer's statement on the form—that he was not carry-

ing more than $5,000—was material. *See, e.g., United States v. Baker*, 626 F.2d 512, 514 n. 4 (5th Cir.1980) (materiality in a false statement prosecution is a question of law for the court).

8. In *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982), this court adopted as binding precedent all of the post-September 30, 1981, decisions of Unit B of the former Fifth Circuit. *Id.* at 34.

country, a lie to customs agents to avoid expected retribution under currency laws will not lead to section 1001 punishment. *See also United States v. Warren*, 612 F.2d 887, 889–90 (5th Cir.) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). Unless customs officials disabuse travelers of the belief that bringing currency into the country is illegal, solicitude for fifth amendment values prevents us from attaching section 1001 liability to this sort of conduct. *E.g., United States v. Schnaiderman*, 568 F.2d at 1214 & n. 12.

*Id.* at 409.

In this context, the "exculpatory no" doctrine creates an additional element of the government's case under § 1001; the government must show that the defendant knew that it was permissible or legal to bring more than $5,000 in currency into the country before a prosecution for a defendant's false representation that he was not carrying more than $5,000 can be sustained. In the posture of the instant case, we must determine whether the government offered sufficient evidence from which a reasonable juror could have concluded that Palzer knew it was not illegal to transport more than $5,000 into the country.[9] Pursuant to this method of review, we view all of the evidence in the light most favorable to the government.

*United States v. Bell*, 678 F.2d 547, 549 (5th Cir.) (Unit B en banc), *aff'd on other grounds*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

The most persuasive proof on the issue of the defendant's knowledge is the type of direct evidence involved in *Anderez*. In *Anderez*, the defendant was expressly told by Customs officials that it was not illegal to carry more than $5,000 into the country, but that carrying that amount or greater required him to fill out additional forms. 661 F.2d at 408–09.[10] Similarly, a modified version of the form that Palzer filled out states expressly in question 11 that it is not illegal to carry more than $5,000 into the country. *See supra* note 5. Proof that the false statement occurred on the modified form would directly support a finding on the defendant's knowledge. But the government is not limited to these direct means of proof in meeting its burden on the "exculpatory no" doctrine. Circumstantial and indirect proof also can support a finding that the defendant knew it was not illegal to transport more than $5,000 into the country. *Cf. United States v. Satterfield*, 644 F.2d 1092, 1094–95 (5th Cir.1981) (Unit B)[11] (in prosecution under § 1001 for falsely representing to Customs officer that he was not transporting more than $5,000, defendant argued that he had no knowledge of the

**9.** Palzer argues that the jury received improper instructions on the exculpatory no doctrine and therefore did not consider whether the government had met its burden on this issue. However, whether or not the trial court gave adequate instructions on the exculpatory no doctrine, a matter on which we do not comment, the inadequacy would amount only to trial error. Assuming *arguendo* that the instructions were inadequate, double jeopardy principles would not bar retrial on Count I of the indictment. *See supra* note 4. Therefore, in connection with the double jeopardy principles at issue in this case, we consider only whether the jury was presented with sufficient evidence to support a finding that Palzer knew it was not illegal to carry the currency into the United States.

**10.** Anderez, who was found to be carrying $24,-000 into the country, initially filled out Form 6059–B and represented that he was not carrying more than $5,000. Before the money was

discovered, a Customs Inspector expressly stated to Anderez that it was not illegal to bring more than $5,000 into the country, although doing so would necessitate completing another form. The court upheld the conviction under § 1001, because at the time Anderez was informed of the legality of his bringing the money into the country he could have recanted his previous false statement and avoided liability by changing his answer on the original Customs form. *United States v. Anderez*, 661 F.2d at 409, *citing* 19 C.F.R. § 148.16 (1980) (individual entering country may amend Form 6059–B at any point before an undisclosed item is found during a customs inspection).

**11.** In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

currency reporting requirement; the court held that government's proof that appellant had gained knowledge eight months previously when informed of the requirement by a Customs officer during the prior entry into the country was sufficient circumstantial evidence of defendant's knowledge to support conviction).

From the evidence introduced at trial, we conclude that the government presented sufficient evidence to support a reasonable finding that Palzer knew it was not illegal to transport more than $5,000 into the country. First, the government showed that seven months prior to his arrest, while returning to the country from travels abroad, Palzer had been presented with and filled out the modified version of Customs Form 6059-B, which included the notice that it was not illegal to transport money in excess of $5000. *See supra* note

5. A reasonable jury could infer that Palzer read and understood that form. *See United States v. Satterfield*, 644 F.2d at 1094-95.[12] Second, Palzer's own statement to Customs officers after the discovery of the $200,000—"What's the big deal anyway? ... [G]ive me the form right now and I'll fill it out"—supports a reasonable inference that he did not believe that carrying the money into the country was against the law.[13] These two factors viewed in the light most favorable to the government, were sufficient to meet the government's burden of proof on the element of Palzer's knowledge.

Because the government introduced sufficient proof to enable a reasonable jury to conclude that Palzer knew it was not illegal to bring more than $5,000 into the country, Palzer was not entitled to an acquittal on the basis of the "exculpatory no" doctrine.

**12.** Palzer argues that because he was presented with the outdated Form 6059-B, which did not include the note on the legality of transporting currency in excess of $5,000, later in time than his completion of the modified form that contained the note, evidence relating to his prior completion of the modified form cannot support a finding of knowledge. This argument may well be persuasive to a jury considering the issue. However, we consider only whether a reasonable inference of knowledge could be drawn from his prior completion of the modified form; we conclude that such an inference is permissible. Similarly, Palzer argues that his statements to Customs officials regarding why he failed to accurately state the amount of currency he was bringing into the country—in particular his comment that he did not want to be "hassled" by Customs officials and did not want to disclose the source of the money—require a finding that he believed it was illegal to carry more than $5,000 into the country. This argument is also better directed to a jury on retrial.

Finally, highlighting the discrepancy between the 1977 and 1978 versions of Form 6059-B, Palzer argues that the government presented him with false information on the state of the law, and thus that his prosecution, which depends on the government proving that he knew it was not illegal to transport the money into the country, violates notions of due process. We reject this argument. Both forms accurately state the law; both state that a person carrying more than $5,000 into the country must report that fact to Customs. The modified version of Form 6059-B merely includes additional information that assists the government in establishing the knowledge element in a prosecution

under § 1001. We conclude that unlike the cases upon which Palzer relies, *see, e.g., United States v. Pennsylvania Industrial Chemical Corp.*, 411 U.S. 655, 674, 93 S.Ct. 1804, 1816, 36 L.Ed.2d 567 (1973); *United States v. Laub*, 385 U.S. 475, 87 S.Ct. 574, 17 L.Ed.2d 526 (1967), the government's use of slightly different Customs forms did not affirmatively mislead Palzer. Furthermore, Palzer introduced no evidence of his detrimental reliance on either form. The government's use of the different forms did not violate Palzer's due process rights and he is not entitled to a judgment of acquittal on this ground.

**13.** Our use of Palzer's statement in this fashion does not conflict with the holding in *Anderez.* In *Anderez,* the court upheld the defendant's conviction because he refused to retract a previous false statement after being informed that carrying more than $5,000 into the country was not illegal. The defendant in *Anderez* was entitled to retract the false statement because the undeclared currency had not yet been discovered. *See supra* note 10. Conversely, Palzer sought to retract his false statements on Form 6059-B only after the undeclared currency had been discovered, at which point he was properly told that it was too late. *See* 19 C.F.R. § 148.16 (1980) (person entering country may amend Form 6059-B at any point before an undisclosed item is found during Customs inspection). We hold only that the jury reasonably could infer from Palzer's indication of willingness to fill out the form that he did not believe it was illegal to carry the $200,000 into the country.

Accordingly, we conclude that it would not violate double jeopardy if the government chooses to retry him on Count I of the indictment.

### B. Challenge to Count II of the Indictment

 Palzer argues that Count II of the indictment cannot support a criminal conviction because the form that he failed to fill out—Customs Form 4790—is an administrative rule that was improperly promulgated, not published, and therefore void.[14] *Compare United States v. $200,000 in United States Currency,* 590 F.Supp. 866 (S.D.Fla.1984) (holding that Form 4790 is a rule that requires notice and comment prior to adoption and publication in the Federal Register before it can support a forfeiture action based on an individual's failure to fill out the form), *with United States v. Lagasse,* No. 83–61–1 (D.Vt. June 18, 1984) (holding that Form 4790 is not an administrative rule but is merely incidental to the statute and regulations and therefore false statements on the form can lead to criminal prosecution). We reject this argument without considering Palzer's challenge to the form,[15] because we conclude that the validity of Count II of the indictment and the offense charged therein does not implicate the propriety of the form.

Count II of the indictment states:

On or about August 4, 1982, at Miami, Dade County, within the Southern District of Florida, and elsewhere, the defendant, Lewis Palzer, did knowingly and willfully transport and caused to be transported from Grand Cayman Island, Cayman Islands, to Miami, Dade County, Two Hundred Thousand Dollars ($200,-000), an amount of U.S. currency in excess of $5,000, the defendant having failed to file U.S. Government Form 4790, Report of International Transportation of Currency or Monetary Instruments, in connection with the above transportation; in violation of Title 31, United States Code, Section 1101(a)(1)(B) and 1058; 31 Code of Federal Regulations, Section 103.23 & 103.49(a).

The general principles for interpreting the sufficiency of an indictment were stated comprehensively in *United States v. Goodman,* 605 F.2d 870 (5th Cir.1979):

"Our prior cases indicate that an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge

---

**14.** Palzer argues that Form 4790 is an administrative rule because it implements the reporting requirements set forth in the statute, 31 U.S.C. § 1101(a)(1)(B), and the regulation, 31 C.F.R. § 103.23(a). *See* 5 U.S.C. § 551 (providing that the term "rule" is defined to encompass "the whole or part of an agency statement of general or particular applicability and future effect, designed to *implement,* interpret, or proscribe law or policy") (emphasis supplied). Thus, according to Palzer, he cannot be adversely affected by the form absent publication in the Federal Register, *see* 5 U.S.C. § 552(a)(1), and valid promulgation pursuant to the notice and comment procedures of 5 U.S.C. § 553. The government concedes that Form 4790 was not published in the Federal Register and was not promulgated pursuant to the procedures set forth in § 553.

**15.** We expressly do not decide whether Form 4790 constitutes a "rule" within the purview of 5 U.S.C. § 551(4). However, even assuming *arguendo* that it is a rule, we note that Form 4790 (to the extent it requires disclosures beyond those required by statute and regulation) may well be merely an interpretative rule, stating the Secretary's view of what constitutes a currency report under 31 U.S.C. § 1101, and the regula-

tions pertinent thereto, 31 C.F.R. §§ 103.23(a) & 103.25(b). *See American Trucking Ass'n, Inc. v. United States,* 688 F.2d 1337, 1341–42 (11th Cir. 1982) (interpretative or nonlegislative rules merely express the agency's interpretation of how it intends to enforce its governing statute), *rev'd on other grounds sub nom, Interstate Commerce Commission v. American Trucking Ass'n, Inc.,* —— U.S. ——, 104 S.Ct. 2458, 81 L.Ed.2d 282 (1984). Although we expressly do not decide whether or not Form 4790 is an interpretive rule, we note that such classification of the rule would have two important consequences: (1) the rule would be exempt from the notice and comment procedures specified in 5 U.S.C. § 553(a), although still subject to the publication requirement of 5 U.S.C. § 552(a)(1); and (2) the form would not necessarily have binding legal effect as to the necessary content of a "report" under the statute and regulations in a prosecution that somehow related to the content of the form. *See American Trucking Ass'n, Inc. v. United States,* 688 F.2d at 1341–42; 2 K. Davis, *Administrative Law Treatise* § 7:16 p. 76 (1979).

against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974). See also *United States v. Debrow*, 346 U.S. 374, 74 S.Ct. 113, 98 L.Ed. 92 (1953); *Hagner v. United States*, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932).

"Specificity does not determine the sufficiency of an indictment." *United States v. Guthartz*, 573 F.2d 225, 227 (5 Cir.1978), *cert. denied*, 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978). "Its [an indictment's] validity is determined by practical, not technical, considerations." *United States v. Guthartz, supra*, at 227; *United States v. London*, 550 F.2d 206 (5 Cir.1977); *United States v. Markham*, 537 F.2d 187 (5 Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977).

*Id.* at 885. Applying these principles to Count II of Palzer's indictment, we find that the indictment was sufficient to charge Palzer with a criminal offense.

Section 103.23(a), 31 C.F.R., provides in pertinent part:

Each person who physically transports, mails, or ships ... currency or other monetary instruments in an aggregate amount exceeding $5,000 on any one occasion ... into the United States from any place outside the United States, shall make a report thereof.

Section 103.25(b), 31 C.F.R., fleshes out the reporting requirement as follows:

Reports required to be filed by § 103.-23(a) shall be filed at the time of entry into the United States ... with the Customs officer in charge at any Customs port of entry .... on forms to be prescribed by the Secretary and all information called for in such forms shall be furnished.

Finally, the criminal penalties relevant to the reporting requirements are found in 31 C.F.R. § 103.49(a), which provides:

Any person who willfully violates any provision of this part may, upon conviction thereof, be fined not more than $1,000 or be imprisoned not more than one year, or both.

By express reference in Count II of the indictment, the government charged Palzer with violating the provisions contained in this regulatory scheme.[16]

The substance of the indictment in this case charges Palzer with willfully failing to report the fact that he was bringing more than $5,000 in currency into the country. Nothing in the content of Form 4790, which Palzer now challenges, is implicated in the offense charged in the indictment, *i.e.*, the willful failure to report the fact that he was bringing in more than $5,000. Section 103.23(a), 31 C.F.R., clearly informed Palzer of the requirement to report the fact that he was carrying more than $5,000 in currency. Section 103.25(b), 31 C.F.R., reiterates the reporting requirement, and specifies the time, place, and manner in which the report is to be made. Palzer does not, and could not, argue that these regulations were improperly promulgated or not published.[17] If the government is able to show

16. The Supreme Court has held in construing the currency reporting requirements of the Bank Secrecy Act (of which 31 U.S.C. § 1101 is a part), that "the Act's civil and criminal penalties attach only upon regulations promulgated by the Secretary: if the Secretary were to do nothing, the Act itself would impose no penalties on anyone." *California Bankers Ass'n v. Schultz*, 416 U.S. 21, 26, 94 S.Ct. 1494, 1500, 39 L.Ed.2d 812 (1974). The above cited regulations implement the statutory provisions, 31 U.S.C. §§ 1101(a)(1)(B) and 1058, set forth the reporting requirement, and specify the time, place, and manner in which a report is to be made. Count II of the indictment charges Palzer direct-

ly with a violation of the implementing regulations. We therefore consider only whether the express reference to the regulations in the indictment made the indictment sufficient to charge Palzer with conduct to which criminal liability validly can attach.

17. Indeed, even if criminal liability for a willful failure to report the currency transaction in the instant case were somehow dependent on forms promulgated by the Secretary—contrary to our holding that it is not—the government could nevertheless prosecute Palzer without reference to Customs Form 4790. Customs Form 6059–B, discussed *supra*, which Palzer has not chal-

that Palzer willfully failed to report the fact that he was carrying more than $5,000, it could obtain a valid conviction directly under the regulatory scheme expressly referred to in the indictment. 31 C.F.R. § 103.49(a).[18]

We conclude that the reference in the indictment to Form 4790, which we have found to be irrelevant to the crime charged therein, was surplusage. As we noted previously, specificity does not determine the sufficiency of an indictment. The Supreme Court held long ago in *Ford v. United States*, 273 U.S. 593, 602, 47 S.Ct. 531, 534, 71 L.Ed. 793 (1926), that reference in an indictment to an element unnecessary to definition of a crime does not require the government to prove that element. *Accord United States v. Goodman*, 605 F.2d at 886–87; *United States v. Greene*, 497 F.2d 1068 (7th Cir.1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975). In the instant case, the government did not need to prove that Palzer failed to fill out Form 4790 in order to obtain a conviction under the regulatory scheme charged in the indictment. Thus, Palzer's failure to fill out a particular form, *i.e.*, is not a necessary element of the offense charged in this case.

Our practical view of Count II of the indictment convinces us that it sufficiently apprised Palzer of the elements of the offense charged and fairly informed him of the charge that he must defend—that is, a willful failure to report to the government the fact that he was carrying more than $5,000 into the country. We therefore re-ject his argument on appeal that the government cannot validly subject him to retrial under Count II of the instant indictment.[19]

## CONCLUSION

We have determined that there was sufficient evidence to support Palzer's conviction under Count I of the indictment. The evidence relating to the "exculpatory no" doctrine was not such that Palzer was entitled to a judgment of acquittal on sufficiency grounds. With regard to Count II of the indictment, we have concluded that it is sufficient to validly charge Palzer with the criminal offense of failing to report the fact that he was bringing more than $5,000 into the country. Therefore, the government is free to retry Palzer on Count II as well.

On the basis of the jury polling error committed in the trial below, the cause is reversed and remanded.

REVERSED AND REMANDED.

---

lenged also embodies the reporting requirements set forth in the regulation. On question 11 of Form 6059–B, an individual entering the country with more than $5,000 is required to report that fact to Customs officials.

18. We do not decide whether a prosecution for violation of the reporting requirement involves consideration of the "exculpatory no" doctrine previously discussed.

19. We emphasize the limited scope of our present holding. We have concluded only that Count II of the instant indictment sufficiently informs Palzer of the offense charged, which we have found to be a valid offense in light of Palzer's alleged conduct, *i.e.*, a total failure to report to Customs officials the fact that he was bringing more than $5,000 into the country. We express no view on the possible operation of the statute, regulations, and forms in a case in which an individual reported the fact that he was carrying more than $5,000 into the country, but refused to provide other information requested on Form 4790. Such a case is not before us.