**Lois ANDERSON, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. C-89-786 RJM.**

United States District Court, E.D. Washington.

Oct. 4, 1990.

Richard P. Algeo, Turner, Stoeve, Gagliardi & Goss, Spokane, Wash., for plaintiff.

Emily Kingston, Trial Atty., Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## ORDER

ROBERT J. McNICHOLS, District Judge.

Trial to the bench was held on October 3, 1990 at 8:00 a.m. The following will constitute the findings and conclusions. As was probably expected by all concerned, the trial brought no surprises. Ms. Anderson's testimony was consistent with her affidavit previously submitted, as was Ms. Brown's deposition testimony. In fact, there is no need to alter the Order entered July 13, 1990 and the same is attached hereto as an Appendix.

The only intervening change in the law of any significance is that the *Wood* decision relied upon so heavily by plaintiff and adopted by this Court has since been affirmed. *Estate of Wood v. C.I.R.*, 909 F.2d 1155 (8th Cir.1990). The strength of the evidence in the instant case is not on a par with the facts of *Wood*, but the principles are the same. The Court is convinced that Ms. Anderson witnessed her 1984 return being postmarked by a postal employee. That raises a rebuttable presumption that it was received by IRS. *Id.* at 1159-61.

The presumption has not been overcome.[1] See *id.* at 1161–62.

There may be thousands of such cases floating around, and the Court appreciates the burdens which would be visited on the Tax Division if each must be tried. The solution, however, is not so difficult. All that need be done is for IRS to call the taxpayer's attention to the benefits of using certified mail; something which is not being done at present.

THEREFORE IT IS ORDERED that:

(1) Plaintiff is entitled to a refund in the principal sum of $3,655.

(2) The Clerk shall enter judgment accordingly.

## APPENDIX

### ORDER

July 13, 1990.

This is a suit for refund. Currently pending are the government's motion to dismiss and plaintiff's motion for summary judgment. Argument was heard telephonically on July 11, 1990. Counsel probably received an indication during the hearing that the Court was leaning strongly toward proceeding to trial. That was in fact the Court's inclination at the time. As is always done prior to finalizing a decision, however, the authorities relied upon were funneled through Westlaw one last time to assure that there has been no significant movement in the case law. The result of that effort has been to further confuse an already confusing morass of conflicting authority. Taking all of plaintiff's allegations as true, the following appears.

Ms. Anderson's 1984 return was prepared on August 12, 1985 by the accounting firm of LeMaster & Daniels and transmitted to her. The return reflected an overpayment of $3,655 and requested that $3,000 be carried over to the 1985 tax year and that the remaining $655 be refunded. After a hiatus of over a year, Ms. Anderson mailed the return to the regional service center on September 15, 1986 using an oversize envelope which had been provided by her accountant. She took the

return to a post office and watched the clerk as he weighed the package, placed stamps on it, cancelled the stamps, and placed the envelope in a pouch.

The $655 refund was never received. At some point which is murky on the present state of the record, plaintiff filed her 1985 return claiming the $3,000 carried over from the previous year. Correspondence followed, not all of which was received by Ms. Anderson. So did a notice of deficiency and subsequent collection efforts when IRS failed to honor the $3,000 carryover. Ultimately, by letter dated December 16, 1988 IRS notified plaintiff of the reason why the carryover was not honored; *viz.*, the 1984 return had never been received. On December 30, 1988 plaintiff provided IRS with a copy of her 1984 return and IRS now takes the position that this is the effective date of filing.

As framed by plaintiff, the question is whether the 1984 return should be deemed filed within three years after the due date of April 15, 1985. If so, then the $3,000 carryover should be applied to the 1985 return. If not, then the money disappears by operation of the statute of limitations. 26 U.S.C. § 6511.

Courts are all over the board on the issue of the extent to which, if at all, extrinsic evidence of mailing gives rise to a presumption of delivery. Some hold summarily that only a certified or registered mailing will suffice, and refuse to allow evidence of any other nature. *See, e.g., In re Brookman,* 114 B.R. 769 (Bkrtcy.M.D.Fla.1990). Others have taken a more ameliorative approach by holding that credible evidence of a mailing being postmarked and placed into the postal system carries with it a fair corollary that the mailing was received. *Crosby v. Commissioner,* 58 A.F.T.R.2d 86–5497 [1986 WL 34348] (D.C.Cal.1986). Perhaps the best overview of both the problem and the array of conflicting authority is contained in *Estate of Wood,* 92 T.C. 793 (1989) (en banc), *appeal pending.* When as many eminent jurists as participated in the *Wood* opinion can

---

1. The government candidly conceded, as it must, that IRS has on occasion lost returns which were in fact mailed and delivered.

disagree so vehemently, it would probably be presumptuous for this Court to attempt to add any insight. The Ninth Circuit does not seem to have addressed the precise issue.[1]

One might think that if the IRS were going to take the position that sending by certified or registered mail constitutes the exclusive means of establishing delivery, it would freely advise the taxpaying public of that fact. But it does not:

> Your return is filed on time if it is properly addressed and postmarked no later than the due date. The return must have sufficient postage. If you send a return by registered mail, the date of the registration is the postmark date. The registration is evidence that the return was delivered. If you send a return by certified mail and have your receipt postmarked by a postal employee, the date on the receipt is the postmark date. The postmarked certified mail receipt is evidence that the return was delivered.

Department of the Treasury, *Your Federal Income Tax,* Publication 17 at page 11 (1989).

The cautious taxpayer might pick up on the hint that using certified or registered mail is the prudent thing to do, but in no wise can this language be read as laying out an immutable requirement that such be done. On the contrary, we are told that a "return is filed on time if it is properly addressed and postmarked no later than the due date." That is what Ms. Anderson claims was done here.[2]

Probably no one would take issue with the proposition that the postal system on occasion misplaces mail, or that the IRS on occasion loses mail which was in fact delivered. *Crosby, supra.* Accordingly, and in the absence of mandatory precedent compelling a contrary result, the Court is inclined to adopt the majority view expressed in *Wood, supra,* and allow plaintiff to put on her proof.

Having said that much, however, there is yet another issue in the case which has recently been the subject of several decisions. It has now been held by at least three courts that § 7502(a) comes into play if, and only if, the filing would be timely if deemed received on the mailing date. *Emmons v. C.I.R.,* 898 F.2d 50, 51 (8th Cir. 1990); *Chasar v. I.R.S.,* 733 F.Supp. 48, 49 (N.D.Tex.1990); *see also, King v. United States,* 495 F.Supp. 334, 337 (D.Neb.1980). A plain reading of the statutory scheme supports that interpretation.

> This subsection shall apply only if ... the postmark date falls within the prescribed period or on or before the prescribed date ... for the filing (including any extension granted for such filing) of the return, claim, statement, or other document.

26 U.S.C. § 7502(a)(2)(A)(i).

Plaintiff's 1984 return was presumptively due on April 15, 1985. She may or may not have obtained an extension; the record does not so disclose. But such silence is not helpful when, under Ms. Anderson's own version of the facts, the return was not mailed until September of 1986—some seventeen months after the presumptive due date. A past due return falls outside the ambit of § 7502(a)(2)(A)(i) and is thus deemed filed on the date of delivery. *Emmons, supra,* 898 F.2d at 51. A late filer who wishes to guard against the risk of

---

1. Although it has addressed a similar question and arrived at a harsh result. See *Shipley v. C.I.R.,* 572 F.2d 212 (9th Cir.1977). In *Shipley,* the taxpayer prepared a timely petition for a redetermination of deficiency. The petition was signed before a notary within the requisite 90 days. The notary's assistant then took the petition to the post office with instructions to send it certified. For some reason, the assistant did not obtain a receipt. When the petition arrived, it bore the following day's postmark and was thus facially untimely. The Ninth Circuit refused to consider extrinsic evidence demonstrating that the mailing had actually been placed into the system the previous day. In the final analysis, however, *Shipley* turned on the well settled proposition that extrinsic evidence is not available to challenge the accuracy of a postmark. *Id.* at 214. So viewed, § 7502 was simply not applicable. *Id.* Here, on the other hand, plaintiff does not question the date of the postmark; she merely wishes to establish what that date is.

2. Assuming, of course, that the "due date" was April 15, 1988 when the statute of limitations would expire. The validity of that assumption is addressed further.

nondelivery can only avail himself of registered or certified mailing. *Chasar, supra*, 733 F.Supp. at 50; § 7502(c).

Now for the mind boggling part. Assuming that the above-cited decisions were rightfully decided, and that plaintiff's 1984 *return* does not enjoy the protection of the statutory mailbox rule, does that same result obtain with respect to her 1984 *claim for refund?* Perhaps Ms. Anderson is not aware even now that she filed a claim for refund, but by virtue of IRS regulations, she did so:

> A properly executed individual ... original income tax return ... shall constitute a claim for refund or credit within the meaning of section 6402 and section 6511 for the amount of the overpayment disclosed by such return (or amended return). For purposes of section 6511, such claim shall be considered as filed on the date on which such return (or amended return) is considered as filed, except that if the requirements of § 301.7502–1, relating to timely mailing treated as timely filing are met, the claim shall be considered to be filed on the date of the postmark stamped on the cover in which the return or amended return was mailed.

26 C.F.R. § 301.6402–3(a)(5).

An ambiguity, or at least an exercise in begging the question, should immediately leap out. To what is the citation to § 301.7502–1 referring: the return, or the claim for refund? Turning to the cited section:

> A return may contain, or have attached to it, a statement which sets forth an election under the internal revenue laws. In such a case, section 7502 is applicable to the statement if the conditions of such section are met, *although it does not*

*apply to the return.* Moreover, in the case of certain taxes [described in § 301.6402–3(a)(5) ], a return may constitute a claim for refund or credit. In such a case section 7502 is applicable to the claim for refund or credit if the conditions of such section are met, *irrespective of whether the claim is also a return.*

26 C.F.R. § 301.7502–1(b)(2) [emphasis added].

The net result is that because the return *qua* return was due on April 15, 1985 it was untimely mailed on September 15, 1986. Ergo, under the express terms of § 7502(a)(2)(A)(i), the mailbox rule is inapplicable. But because the return *qua* claim for refund was not due until at least April 15, 1987, even in the absence of any return having been submitted at all,[3] a mailing on September 15, 1986 would be timely and thus deemed filed as of the time of mailing. In so concluding, the Court is aware that both *Chasar* and *King* must have, at least *sub silentio*, rejected this analysis.[4] Trial courts sometimes disagree.

If the discussion seems more semantical than substantive, consider this variation on the facts. Ms. Anderson has "X" dollars withheld by her employer during the course of a given tax year. She owes only "Y" dollars thereby leaving her with excess withholding in the amount of "Z" dollars. For one reason or another, perhaps legitimate or perhaps not, she does not file a return at all. However, within two years after the amounts subject to withholding were deemed paid, she does mail a claim for refund. From that point forward, the facts occur just as alleged herein. Would anyone seriously argue that her timely claim for refund would not enjoy the benefit of the mailbox rule?

---

**3.** In the absence of any return at all, the focal point for triggering the statute of limitations would be the date the taxes were paid. 26 U.S.C. § 6511(a). That date is deemed to be April 15th following the tax year at issue. 26 U.S.C. § 6513(b)(1). In this case, therefore, the 1984 taxes were deemed paid on April 15, 1985. Plaintiff thus had a minimum of two years from that date in which to file a claim for refund. Under the facts at bar, of course, the return and the claim for refund are one and the same document. 26 C.F.R. § 6402–3(a)(5). Thus, the

applicable statute of limitations is the three-year provision. Under either scenario, a filing on September 15, 1986 would be timely.

**4.** But not *Emmons*. That decision dealt with the interplay between 26 U.S.C. § 7502 and a notice of deficiency issued under 26 U.S.C. § 6501 and had no occasion to consider whether a claim for refund would fall within § 7502 so long as it was mailed within the limitations period.

With that, we are right back to the core question as framed by the parties, which is whether this Court should adopt *Wood, supra.* For reasons previously stated, the Court does, and trial will proceed as provided for below.

THEREFORE IT IS ORDERED that:

(1) Defendant's motion to dismiss is DENIED. *CR 9.*

(2) It appearing that the core factual question is plaintiff's credibility, and that the defense is entitled to test that credibility under oath, plaintiff's motion for summary judgment is DENIED. *CR 6.*

(3) Counsel shall consult with one another and with Dave Naccarato to ascertain a trial date. The Court is prepared to try the matter as early as counsel are ready. As indicated during the hearing, the Court encourages the government to group hearings and/or other matters pending in this district to avoid unnecessary expense in appearing for what promises to be a very brief trial.

DONE BY THE COURT this 13th day of July, 1990.