UNITED STATES of America, Plaintiff–Appellee,

v.

Donald L. BOWERS; Janet E. Bowers, Defendants–Appellants.

No. 90–5640.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 5, 1990.

Decided Nov. 29, 1990.

As Amended Dec. 6, 1990.

Lowell Harrison Becraft, Jr., Huntsville, Ala., for defendants-appellants.

John C. McDougal, Sp. Asst. U.S. Atty., Richmond, Va., argued (Henry E. Hudson, U.S. Atty., Richmond, Va., on brief) for plaintiff-appellee.

Before HALL and MURNAGHAN, Circuit Judges, and STAMP, United States District Judge for the Northern District of West Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

Donald and Janet Bowers appeal their convictions for income tax evasion, in violation of 26 U.S.C. § 7201. We affirm.

## I.

In this case, we are not burdened by sharp factual disputes. The Bowers presented no evidence at trial, and instead relied wholly on legal arguments that were rejected by the district court and are now renewed.

Through 1979, the appellants filed income tax returns and paid income taxes. In 1980, however, they stopped filing returns and began listing themselves as "exempt" on their W-4s, so that their employers would not withhold tax. The two apparently believe, or at least believed, that taxation is unconstitutional.

In 1982 the Bowers were audited, and taxes were assessed. They responded by instituting a series of Tax Court proceedings in which they challenged the proposed tax assessments under a variety of bizarre legal theories, including that they are not "persons" within the meaning of the Internal Revenue Code and that wage income is non-taxable. The Tax Court upheld the assessments and imposed penalties of $6,500 for the Bowers' frivolous arguments.

Undaunted, the Bowers continued to file "exempt" W-4s and to abstain from filing returns. In March 1984 the IRS levied on their bank accounts, at which time they began a concerted effort to conceal their assets from the government. They closed their checking accounts four days after the levy, and have not since had any account in their own names. In order to pay their bills, they used postal money orders and accounts under their minor sons' names. They transferred title to their mobile home and vehicles to Mrs. Bowers' mother.

The pair were eventually indicted for failing to file income taxes, Donald from 1983 to 1986 and Janet from 1984 to 1986. Over that period, Donald Bowers evaded taxes of $8,069, and Janet Bowers $12,758. They filed a pretrial motion to dismiss for lack of jurisdiction, arguing that the IRS had not complied with the publication requirements of 5 U.S.C. § 552, and they could therefore not be prosecuted for failing to comply with unpublished agency directives. The district court deferred its ruling until after a bench trial, when it denied the motion, and found both guilty. The court sentenced Donald Bowers to 4 consecutive 3-year terms and Janet Bowers to 3 consecutive 4-year terms of imprisonment.

On appeal, the Bowers renew their "lack of publication" defense and challenge the admission of several government exhibits.

## II.

Title 5 U.S.C. § 552 requires each federal agency to publish in the Federal Register:

(1) descriptions of its organization;

(2) statements of its procedures;

(3) rules of procedure, descriptions of forms or the place where forms may be obtained, and instructions as to the contents of any reports required;

(4) substantive rules of law and statements of general policy adopted by the agency; and

(5) any amendments of (1)-(4).

The statute goes on to state:

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be pub-

lished in the Federal Register and not so published.

The Bowers argue that the IRS has failed to publish the forms it requires to be used to report income and instructions for filling out those forms, and has not updated the publication of its organizational structure since 1974. Therefore, the Bowers assert, they cannot be prosecuted for failure to comply with these unpublished rules and policies.

■ The Bowers make a sizable leap of logic in their argument. They were not convicted of "failure to submit Form 1040" or "failure to send their return to the proper regional service center." They were convicted of evading income tax altogether. The statutes themselves require the payment of the tax and the filing of a return. 26 U.S.C. § 6012. The contents of the required return are described, in a general way, right in the statute. If a taxpayer had done his best to fashion and file a homemade return for want of notice of the IRS forms, and had paid the applicable tax, then 5 U.S.C. § 552 might protect him from being "adversely affected" by nonpublication of a form.[1] However, the Bowers simply have evaded income taxes, and their duty to pay those taxes is manifest on the face of the statutes, without any resort to IRS rules, forms, or regulations.[2] *Cf. Welch v. United States*, 750 F.2d 1101–11 (1st Cir.1985) (prosecution under 26 U.S.C. § 6702 for filing frivolous return not barred by nonpublication of interpretive IRS guidelines).

Moreover, the factual premises of their argument are weak. The Code of Federal Regulations is a special edition of the Federal Register. Seventeen volumes of Treasury regulations are included in C.F.R. A general description of the organization of the IRS is located in 26 C.F.R. § 601.101. Section 601.602(c) reads:

> *Where to get forms and instructions.* The Internal Revenue Service mails tax return forms to taxpayers who have previously filed returns. However, taxpayers can call or write to district directors or directors of service centers for copies of any forms they need. These forms are described in Publication 676, *Catalogue of Federal Tax Forms, Form Letters, and Notices*, which the public can buy from the Superintendent of Documents, U.S. Government Printing Office, Washington, D.C. 20402.

Title 5 U.S.C. § 552 specifically permits an agency to publish, in lieu of its forms, "the places at which forms may be obtained." 26 C.F.R. § 601.602(c) plainly satisfies this standard. Though the IRS has perhaps been lax in updating its detailed statement of organization,[3] we do not see how any publication omission has adversely affected the Bowers.

Finally, the district court also ruled against the Bowers by noting that they had filed income tax returns before 1980, and they therefore were patently on actual notice of the existence and contents of the forms. Section 552 explicitly does not protect individuals who have actual notice of unpublished agency rules.

Section 552 simply recognizes one of the most basic concepts of due process and ordered liberty—that citizens are entitled to notice of the laws to which they are subject. It protects the unwary citizen from arbitrary raids of clandestine govern-

1. The tax regulations actually protect a taxpayer in this regard. A return on an unofficial form is accepted as a provisional return, provided a return on the proper form is forthcoming. 26 C.F.R. § 1.6011–1(b).

2. The cases relied upon by the Bowers, on the other hand, involve unpublished rules that imposed substantive obligations beyond those created by the statute itself. *E.g., United States v. Reinis*, 794 F.2d 506 (9th Cir.1986) (statute delegated to Secretary of Treasury authority to determine by rule what transactions need be reported on currency transaction form; without published agency rule, government could not require reporting of transaction); *Appalachian Power Co. v. Train*, 566 F.2d 451, 455 (4th Cir. 1977) (EPA could not enforce effluent emission standards contained in unpublished "Development Document"). *See generally,* Annotation, "What Rules, Statements, and Interpretations by Federal Agencies Must Be Published," 77 A.L.R. Fed. 572 (1986 & Supp.1990).

3. The IRS last published a detailed description of its organization in 1974. 39 Fed.Reg. 11572.

ment. The Bowers may have been misguided, but they were certainly not unwary. To reverse their convictions, we would have to conclude that (i) the statutes provide no notice of the obligation to pay income taxes, (ii) the IRS forms and offices are secret though known to over two hundred million Americans, (iii) the Bowers somehow forgot about the forms and offices after filing their 1979 return, and (iv) all of this secrecy and forgetfulness would be rectified by printing a notice in a publication read by, and perhaps even known to, only a handful of the population. We are not persuaded.

### III.

■ The majority of the facts of this case were stipulated, but the Bowers put the government to its proof on whether they had in fact not paid their taxes.

To prove this essential element, the government offered Exhibit 28 and Exhibits 102–108. The former is a compilation of "Certificates of Assessments and Payments" showing no record of returns filed by the Bowers. Each individual document has a sealed cover certificate authenticating it pursuant to Fed.R.Evid. 902. Exhibits 102–108 are the computer data from the Martinsburg, West Virginia, computer center that were used to construct Exhibit 28.

Appellants argue that these exhibits are hearsay and do not satisfy any hearsay exception. They busy themselves arguing that the exhibits are not "business records" admissible under Rule 803(6) or "official records" admissible under 803(8). Though the government does not concede the point as to those two exceptions, *see United States v. Hayes*, 861 F.2d 1225, 1230 (10th Cir.1988) (IRS computer records properly admitted under Rule 803(6)), it argues that the exhibits are clearly admissible as "certificates of lack of official record" under Rule 803(10). *E.g., United States v. Neff*, 615 F.2d 1235 (9th Cir.1980).

All of the exhibits were sponsored by employees at the IRS' Philadelphia Service Center. Appellants' primary argument is that these employees are not the "custodi-ans" of the data stored in the mainframe computer in Martinsburg.

Rule 803(10) reads:

*Absence of public record or entry.* To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

The challenged exhibits satisfy this exception to hearsay. The IRS regularly makes and preserves computer "data compilations" about taxpayers. The certificates disclose the "nonoccurrence ... of a matter" which would have been included in the data compilation.

Appellants' arguments about the "custodian" of the record are weak. Rule 803(10) simply requires a "diligent search." The persons in Philadelphia had access to the computer data stored in Martinsburg. Traditional notions of physical "custody" in hearsay rules make little sense when applied to computer data. We will not impose on a public agency a requirement to send a witness from the physical location of the agency's mainframe computer every time data from that computer must be presented in court. The real custodian is the agency, and those who signed the certifications had the agency's authority to search the records. So long as the sponsoring witness has full access and authority to search the public agency's computer data, conducts the search diligently, and is available for cross-examination about his access, authority, and diligence, the concern for trustworthiness embedded in the rules of evidence is satisfied. The Bowers' anxieties about the reliability of such data are grist for the trier of fact's mill. In a case where a defendant contests the computer-generated evidence, and attacks its reliability, he may succeed in creating a reasonable doubt of his guilt. Nonetheless, we will not make

the presentation of such evidence a compulsory dog-and-pony show just because some defendant may someday successfully refute it.

District court rulings on evidence must be affirmed unless they constitute an abuse of discretion. The admission of the challenged exhibits was proper and well within the court's sound discretion.[4]

The judgment of the district court is affirmed.

AFFIRMED.

---

**4.** The government also presented a certificate from the Virginia Department of Taxation that the Bowers did not pay state income taxes from 1981 to 1988. The defense interposed a hearsay objection, which was properly denied for the same reasons as the IRS exhibits. Though it eludes us how this exhibit is relevant to a prosecution for federal tax evasion, any error was waived by appellants' failure to object on that ground.