**In re Brett A. BOEDECKER, Boedecker Resources, Inc., Debtor.**

**Bankruptcy Nos. 93–10904–11, 93–10442–11.**

United States Bankruptcy Court, D. Montana.

Dec. 8, 1993.

James A. Patten, West, Patten, Bekkedahl & Green, Billings, MT, for debtor.

Lorraine D. Gallinger, Interim U.S. Atty., Billings, MT, Jeffrey D. Snow, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for IRS.

### ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this Chapter 11 case, Debtor, Boedecker Resources, Inc., filed an objection to that portion of the Amended Proof of Claim of the Internal Revenue Service ("IRS") seeking $66,075 as penalty for non-filing of informational returns concerning the Debtor's pension benefit plan. The amended claim seeks penalties under 26 U.S.C. § 6652(e) in the sum of $15,000 per year for the tax years ending 1986, 1987, 1988, 1990, and 1991. The IRS concedes the required tax form 5500 was timely filed for the year 1989, and no claim is thus made for that tax year. After notice, hearing on the objection was held November 18, 1993, with the Debtor and IRS represented by counsel. Witnesses were called by each party and exhibits admitted into evidence. Post hearing briefs have been filed and the matter is ripe for decision.

■ Also filed post hearing on November 30, 1993, was a motion to strike Exhibit D, introduced in evidence by the IRS over Debtor's objections as to lack of foundation. The motion contends Exhibit D, a copy of a computer transcript concerning the non-filing of pension tax returns, does not comply with Rule 803(10), Fed.R.Evid., in that the witness, through whom the exhibit was offered, did not personally conduct the computer research. A review by the Court of the trial transcript shows the witness Vetscher, an IRS auditor, requested the transcript through one of Vetscher's office personnel (Opitz), who filled out an internal form requesting the transcript from the IRS central filing office in Martinsburg, West Virginia. As a result of such request, Exhibit D was returned to Vetscher in the regular course of business. Debtor relies on *U.S. v. Bowers,* 920 F.2d 220 (4th Cir.1990) in support of the motion to strike. *Bowers,* discussing similar transcripts of non-filing computer print outs, states at page 223:

All of the exhibits were sponsored by employees at the IRS' Philadelphia Service Center. Appellants' primary argument is that these employees are not the "custodians" of the data stored in the mainframe computer in Martinsburg.

Rule 803(10) reads:

*Absence of public record or entry.* To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a certification in

accordance with Rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry.

The challenged exhibits satisfy this exception to hearsay. The IRS regularly makes and preserves computer "data compilations" about taxpayers. The certificates disclose the "nonoccurrence . . . of a matter" which would have been included in the data compilation.

Appellants' arguments about the "custodian" of the record are weak. Rule 803(10) simply requires a "diligent search". The persons in Philadelphia had access to the computer data stored in Martinsburg. Traditional notions of physical "custody" in hearsay rules make little sense when applied to computer data. We will not impose on a public agency a requirement to send a witness from the physical location of the agency's mainframe computer every time data from that computer must be presented in court. The real custodian is the agency, and those who signed the certifications had the agency's authority to search the records. So long as the sponsoring witness has full access and authority to search the public agency's computer data, conducts the search diligently, and is available for cross-examination about his access, authority, and diligence, the concern for trustworthiness embedded in rules of evidence is satisfied.

In *Bowers,* unlike the present case, the IRS offered a compilation of each transcript as "Certificates of Assessments and Payments" showing no returns filed by the taxpayer. *Id.* at 223. The use of the term "data compilation" in Rule 803(10) is a term of art to include electronic computer storage data. *United States v. Farris,* 517 F.2d 226, 228 (7th Cir.1975), *cert. denied,* 423 U.S. 892, 96 S.Ct. 189, 46 L.Ed.2d 123 (1975).

The IRS witness confessed he had no knowledge of or ever used a certification form to bring Exhibit D in compliance with the first alternative of Rule 803(10). *See, U.S. v. Spine,* 945 F.2d 143, 148 (6th Cir. 1991) (IRS introduced into evidence three certified "Certificates of Assessments and Payments" (Forms 4340)). Rather, Vetscher

testified the transcript was returned from the Martinsburg record center by Vetscher's direction to an office staff employee. *United States v. Neff,* 615 F.2d 1235, 1241–1242 (9th Cir.1980), *cert. denied,* 447 U.S. 925, 100 S.Ct. 3018, 65 L.Ed.2d 1117 (1980), indicates that testimony by a custodian of IRS records to the effect that in producing the document he "researched the National Computer Center in Martinsburg, West Virginia, where all tax information is merged for every individual in the nation" appears to be sufficient under the second alternative of Rule 803(10), although the evidence in *Neff* also included the IRS Certificate of Assessment Forms. *Neff* noted the mere failure to include the word "diligent" is not sufficient to defeat the applicability of Rule 803(10). *Id.* at 1242. The absence of Form 4340 in the transcript may be fatal, particularly where, as here, the IRS witness professed ignorance of such process, and did not personally conduct the search. Vetscher testified that in attempting to see if the form 5500s were filed "we" requested a transcript print out of the record of the taxpayer and determined through Exhibit "D" that no filings were made for the years 1986, 1987, 1988, 1990 and 1991. All matters considered, however, I find a diligent search of the taxpayer status has been performed in the computer record center and the Exhibit D passes the trustworthy test. The admissibility of Exhibit D on foundation was established by testimony even though it must be concluded the foundation testimony was weak. The motion to strike is denied. The admission of Exhibit "D", however, is not conclusive on other issues.

■ As to the merits of the objection to the amended Proof of Claim, the evidence presented by the Debtor shows that for the tax years in question the accountant testified concerning the preparation of each Form 5500, that in the years 1986, 1987 and 1988, each return was signed by the taxpayer's officer in the accountant's presence, and each return was then mailed to the IRS regional office in Ogden, Utah, in the same envelope with the Form 1120 corporate return. For the years 1990 and 1991, the accountant stated the Forms 5500 were signed in the office at the counter, along with the corporate re-

turns, and then timely mailed to the IRS. None of the returns were sent by registered mail and the IRS has raised no objection that the corporate returns were not received. The accountant, due to a lapse of time, was equivocal as to whether the accountant personally deposited the returns in the mail and made an inconsistent affidavit that the 1990 and 1991 returns were delivered to the taxpayer for mailing. At trial, the accountant testified the returns for 1990 and 1991 were signed at the counter and taken to the post office for mailing.

After the 1989 return was properly filed, the IRS questioned by letter dated November 27, 1990, the completeness of the return and asked for additional information. A copy of the 1989 return was sent to the taxpayer together with the envelope copy bearing a postmark of September 7, 1990, from Glendive, Montana. That is the same date shown on the 1989 return. In addition, the filed return shows a stamp receipt with an ineligible date as received "11'90". All other returns sent to the IRS for the years in question during the audit period (1993) are without date, but with the signature of the Debtor's officer. These signed returns are photocopies of the returns in the accountant's file, who testified that as a matter of office practice the accountant does not make copies of the signed and dated returns, but retains an unsigned copy of the return for the accountant's records.

The IRS agent testified that Exhibit D, the transcript of the pension plan returns, shows the only return filed was the year 1989. Indeed, the transcript shows from the posting code that no returns have been filed before 1989, even though the pension plan was effective 1–1–81, so that returns were due for 1981–1982–1983–1984 and 1985, as well as the years in question. The IRS makes no claim for non-filing penalties for those years. Exhibit "D", by itself, and without any certification form, is an incomprehensible maze of figures without any legend to explain the figures. The IRS agent's testimony that the Code figure "150" indicates a return was filed is the only evidence which renders Exhibit "D" somewhat meaningful.

Other posting Codes (such as 141 and 590) were never explained by the witness.

The rule in the Ninth Circuit concerning proof of mailing is discussed in *Anderson v. U.S.*, 966 F.2d 487, 491 (9th Cir.1992) adopting the rationale of *Wood v. Commissioner*, 909 F.2d 1155 (8th Cir.1990). *Anderson* holds:

> Congress enacted section 7502 [26 U.S.C. § 7502] to mitigate the harshness of the old common law physical delivery rule which had required that tax documents must be physically received by the IRS on time to be timely filed. The old common law physical delivery rule left taxpayers vulnerable to postal service malfunctioning.
>
> Section 7502 carves out an exception to the physical delivery rule by creating a statutory "mailbox rule." The statute allows a taxpayer to prove timely filing on the basis of timely mailing notwithstanding the date of physical delivery of the tax return to the IRS.
>
> Under section 7502(a), taxpayers may avail themselves of the statutory mailbox rule by producing the postmark. According to this section, a timely postmark satisfies the timely filing requirement even if the document reaches the IRS after the deadline.
>
> Section 7502(c) also allows a taxpayer to prove timely mailing by producing the date shown on the postal receipt given for tax returns sent to the IRS by registered or certified mail. Under section 7502(c), a claim sent by certified or registered mail is presumed delivered on the date shown on the registered or certified mail receipt. 26 U.S.C. § 7502(c). By its own terms, section 7502(c) applies only when the document is sent by registered or certified mail. *Id.*

*Anderson,* 966 F.2d at 490.

Further, *Anderson* states extrinsic evidence may be submitted by the taxpayer to prove the postmark date.

> Neither the language of the statute nor Ninth Circuit precedent bars admission of extrinsic evidence to prove timely delivery. Though we recognize that other circuits have decided the matter differently, we are

persuaded by the approach taken by the Eight[ ] Circuit in *Wood v. Commissioner*, 909 F.2d 1155 (8th Cir.1990).

In *Wood*, the Eighth Circuit affirmed an en banc decision by the U.S. Tax Court which held that extrinsic evidence was admissible to prove a postmark for purposes of showing timely mailing. The IRS alleged that it did not receive an estate tax filing even though an attorney for the estate testified that he saw the postal clerk "weigh the envelope, put postage on it, cancel it, and put it into the appropriate bundle of outgoing mail." *Wood*, 909 F.2d at 1157. The district court admitted the testimony because it provided direct evidence of timely mailing from the attorney who saw the postal clerk postmark the envelope. The court in *Wood* then held that the common law mailbox rule was applicable. The Eighth Circuit found that the government failed to rebut the common law presumption of timely delivery from the estate's proof of timely mailing, and concluded that the estate's tax documents were timely filed.

We find that the facts in Anderson's case are analogous, and adopt the Eighth Circuit's reasoning in *Wood*. Anderson provided direct proof of a timely postmark because she actually saw the postal clerk stamp her document. In such circumstances, we find that Anderson was able to establish that her 1984 return was postmarked on September 15, 1984.

966 F.2d at 491.

Finally, *Anderson* then decides that Section 7502 did not displace the time-honored rule of common law presumption of delivery. *Id*. *Anderson* states that rule as follows:

Under the common law mailbox rule, proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee. *Rosenthal v. Walker*, 111 U.S. 185, 193–94, 4 S.Ct. 382, 386, 28 L.Ed. 395 (1994); *Wood*, 909 F.2d at 1161 (citing *Walden v. Commissioner*, 90 T.C. 947, 951 (1988)).

966 F.2d at 491.

In *Anderson* and *Wood*, both trial courts found the government failed to overcome the rebuttal presumption of the statutory and common law mailbox rules. The testimony in each case was that the taxpayer (*Anderson*) and taxpayer's accountant (*Wood*) both personally witnessed a United States Postal Service employee postmark the envelope for mailing and place it in the mailing pouch. The IRS in each case offered no evidence of non-receipt.

Neither *Anderson* nor *Wood* supports the Debtor's factual position in this case. There is simply no evidence from the Debtor's accountant or the Debtor's signatory (who did not testify) that they saw the postmark placed on the mailing envelope. The extrinsic evidence to prove the statutory mailbox rule by producing the postmark is thus lacking.

■ This leaves us with the common law mailbox rule. The Debtor has shown by credible evidence that the returns were placed in the mail by the accountant or the accountant's staff with the corporate returns. The corporate returns were obviously received by the IRS. The presumption, then, is that each pension return was also received by the IRS. In rebuttal, the IRS has sought to overcome the presumption by showing through Exhibit D that the informational returns were never received by the addressee. The IRS has shown by the computer transcript that it has no record of filings of pension plan returns for any year other than 1989. The computer transcript may be reliable evidence of the fact that the returns were not received, even if one accepts they were mailed. But under the facts in this case, I give no weight to such print out because of lack of evidence as to its meaning and other compelling factors.

One is left in a quandary as to why the Debtor's accountant had unsigned returns in the accountant's office file for each of the tax years in question. A review of each return clearly shows different forms and preparation data, and there is no evidence the accountant belatedly prepared the returns to satisfy the IRS inquiry. Further, the corporate returns, mailed with the pension returns, were timely received by the IRS. It is important to note that the 1989 Form 5500, also mailed with the corporate return in the

same fashion as the other years in question, is stamped as received by the IRS. If the 1989 return was properly processed, so should have the Forms 5500 for the other years. Such is the state of the record.

Vetscher's credibility is further undermined by Vetscher's testimony to the effect that Vetscher never heard of a pension return being lost, and was not aware of IRS certification procedure. Other cases note that the government admits losing returns which were in fact mailed and delivered. *Anderson v. U.S.*, 746 F.Supp. 15, 16, Ftn. 1 (E.D.Wash.1990), *aff'd* 966 F.2d at 492. Vetscher is either denying the obvious, or is admitting that Vetscher is not in a position to know, and therefore not in a position to testify reliably on the issue of IRS receipt of informational returns.

All matters considered, I find the IRS has failed to overcome the presumption of mailing and delivery under the common law mailbox rule, notwithstanding Exhibit D. Accordingly, the Debtor's objection should be sustained and the penalties disallowed.[1]

IT IS ORDERED the Debtor's objection to the Amended Proof of Claim of the Internal Revenue Service is sustained as to penalties assessed for non-filing of Forms 5500 for the years 1986, 1987, 1988, 1990, and 1991; and the amended Proof of Claim is disallowed as to the penalties in the sum of $66,075.

---

[1]. This holding is further buttressed by the result sought by the IRS for alleged failure to file returns which are informational only. Exhibit 5 shows $86,145 in total pension plan assets after 1991. The IRS seeks $66,075, or 76.7% of the total amount. For such a harsh result the IRS must carry its burden of proof with evidence of more credibility than it offered here.