UNITED STATES of America, Appellee,

v.

Haim YUZARY, Defendant–Appellant.

No. 285, Docket 94–1137.

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1994.

Decided May 1, 1995.

Jane Simpkin Smith, New York City (Larry J. Silverman, New York City, of counsel), for defendant-appellant.

Leonard Lato, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., Brooklyn, NY, of counsel), for appellee.

Before: MESKILL, WINTER, and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

Defendant-appellant Haim Yuzary appeals from a judgment entered March 9, 1994 in the United States District Court for the Eastern District of New York, Gregory W. Carman, *Judge*,[1] that convicted Yuzary, after a jury trial, on both counts of an indictment that charged: (1) willful failure to file an accurate report of his transport of currency in excess of $10,000 out of the United States in violation of 31 U.S.C. §§ 5316[2] and 5322,[3] and (2) making a false statement to a United States Customs Service ("Customs") inspector in violation of 18 U.S.C. § 1001.[4]

Both the inaccurate report and the false statement were embodied in a Customs Form 4790 in which Yuzary stated that he was transporting approximately $30,000 out of the United States, when in fact he had approximately $480,000 in his possession. On appeal, Yuzary principally argues that Form 4790 was not properly promulgated in accordance with the applicable provision of the Administrative Procedure Act (the "APA"), see 5 U.S.C. § 553, and that this deficiency invalidates both counts of conviction.

We affirm the judgment of the district court.

## Background

On November 7, 1991, at approximately 11:00 p.m., Yuzary attempted to board Air Ecuatoriana Flight 051, bound for Panama from John F. Kennedy Airport ("Kennedy") in Queens, New York. He was carrying approximately $480,000 in cash. A Customs official interviewed Yuzary on the jetway between the terminal and the airplane, and

---

1. After pretrial proceedings before Judge Sterling Johnson, Jr., of the United States District Court for the Eastern District of New York, the case was tried before Judge Gregory W. Carman of the United States Court of International Trade, sitting by designation.

2. Section 5316 provides in pertinent part that:
   (a) ... [A] person ... shall file a report under subsection (b) of this section when the person ... knowingly—
   (1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time—
   (A) from a place in the United States to or through a place outside the United States; or
   (B) to a place in the United States from or through a place outside the United States; or
   (2) receives monetary instruments of more than $10,000 at one time transported into the United States from or through a place outside the United States.
   (b) A report under this section shall be filed at the time and place the Secretary of the Treasury prescribes. The report shall contain the following information *to the extent the Secretary prescribes:*
   (1) the legal capacity in which the person filing the report is acting.
   (2) the origin, destination, and route of the monetary instruments.

   (3) when the monetary instruments are not legally and beneficially owned by the person transporting the instruments, or if the person transporting the instruments personally is not going to use them, the identity of the person that gave the instruments to the person transporting them, the identity of the person who is to receive them, or both.
   (4) *the amount and kind of monetary instruments transported.*
   (5) additional information.
   *Id.* (emphasis added).

3. Section 5322 provides in pertinent part that: "(a) A person willfully violating this subchapter or a regulation prescribed under this subchapter ... shall be fined not more than $250,000, or imprison[ed] not more than five years, or both."

4. Section 1001 provides that:
   Whoever, *in any matter within the jurisdiction of any department or agency of the United States* knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or *makes any false,* fictitious or fraudulent *statements or representations,* or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined under this title or imprisoned not more than five years, or both.
   *Id.* (emphasis added).

explained that anyone carrying more than $10,000 in currency is required to provide a report on Customs Form 4790, which calls for pedigree information and a specification of the type and amount of currency being transported. Yuzary responded by presenting a letter addressed to Yuzary from his attorney, which asserted that Yuzary's company, More Money International Funding, was a "bank" that was exempted from the reporting requirement by 31 C.F.R. §§ 103.11(b)(7) (defining "bank") and 103.23(c)(2). *But see infra* note 6 (§ 103.23(c)(2) makes exemption available only "in respect to currency or other monetary instruments mailed or shipped *through the postal service or by common carrier*") (emphasis added).

Other Customs officials joined the encounter, and Yuzary ultimately yielded to their insistence that a Form 4790 report be filed. A Customs official filled in the initial pedigree information on the form, utilizing information from Yuzary's passport. Yuzary then filled in the information that he was carrying approximately $30,000 in currency,[5] and dated and signed the form. Further investigation revealed, however, that Yuzary was carrying $180,000 in the pockets of a vest that he was wearing, $300,000 in a satchel that he was carrying, and $793 in a billfold.

Yuzary was then arrested. He was subsequently indicted on the two counts previously summarized, and convicted on both counts after a jury trial. He was sentenced to one year of probation on each count, to run concurrently, a consecutive $500 fine on each count, and a $50 special assessment on each count.

This appeal followed.

### Discussion

Yuzary contends on appeal that the primary crime charged, willful failure to file an "accurate report as defined in [31 U.S.C. § 5316(b)(4)]," is a "prosecutorial invention," because a duty to report the *amount* of currency transported out of the United States cannot be found in § 5316 or its implementing regulations, but only in Form 4790, which was not promulgated in accordance with the requirements of the APA. Yuzary argues that consequently, (1) no criminal liability can lie under 31 U.S.C. § 5322 for the willful violation of § 5316 with which he is charged, and (2) his false statement to Customs did not pertain to a "matter within the jurisdiction of an[ ] ... agency of the United States" within the meaning of 18 U.S.C. § 1001. He also argues that Form 4790 is ambiguous with respect to the requirement that the "amount" of transported currency be reported, and that the prosecutor's summation improperly attempted to lessen the government's burden of proof regarding Yuzary's claim that he acted on advice of counsel, rather than in willful violation of the law.

We will first address Yuzary's primary challenge to his conviction for filing a false Form 4790, and then summarily consider his other contentions.

### A. *The Form 4790 Requirement to Report the Amount of Transported Currency.*

Section 5316 imposes a duty upon anyone transporting more than $10,000 into or out of the United States to file a report at a time and place prescribed by the Secretary of the Treasury. § 5316(b), *supra* note 2. The report is to include, "to the extent the Secretary prescribes," *id.*, among other items, "the amount and kind of monetary instruments transported." § 5316(b)(4).

31 C.F.R. § 103.23(a), implementing § 5316(a)(1), requires anyone physically transporting more than $10,000 into or out of the United States to "make a report thereof." Section 103.23(b), implementing § 5316(a)(2), requires anyone in the United States who receives from outside the United States more than $10,000 from such a transportation, with respect to which no report was filed under § 103.23(a), to "make a report thereof, stating the amount, the date of receipt, the form of monetary instruments, and the person

5. Yuzary wrote the number "30,000" as the "value in U.S. dollars" of the "currency" that he was carrying, and preceded the number with a "squiggly" line with a straight line underneath it that apparently was intended to signify that the number was an approximation.

from whom received."[6] The regulations specifically state that reports required by § 103.23 (*inter alia*) must "be filed on forms prescribed by the Secretary," and that "[a]ll information called for in such forms shall be furnished." 31 C.F.R. § 103.27(d).[7] The form · upon which one reports under § 103.23(a) and (b) is Form 4790, which requires the reporting person to state the "type and amount of currency/monetary instruments" transported and its "value in U.S. dollars." The time and place for filing Form 4790 are set forth in 31 C.F.R. § 103.27(b)(3), which required Yuzary (absent any applicable exemption) to file the form with the Customs officials at Kennedy upon his departure for Panama.

Yuzary argues that the creation of Form 4790, which requires not only that each person transporting more than $10,000 "make a report thereof" but that the amount be disclosed, was "rule making" subject to the notice and comment procedures of the APA. *See* 5 U.S.C. § 553.[8] To begin with, the APA definition of a "rule" is far from a model of clarity. *See* 5 U.S.C. § 551(4) (defining "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirement of an agency)"; I Kenneth Culp Davis & Richard J. Pierce, Jr., *Administrative Law Treatise* § 6.1, at 226 (3d ed. 1994) (*"Treatise"*) ("the APA definition of 'rule,' if read literally, is broad enough to encompass virtually any statement an agency might make in any context") (citing *Center*

6. Section 103.23 provides in pertinent part that:
(a) Each person who physically transports, mails, or ships, or causes to be shipped, or attempts to physically transport, mail or ship, or attempts to cause to be physically transported, mailed .or shipped, currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time *from the United States to any place outside the United States,* or into the United States from any place outside the United States, *shall make a report thereof....*
(b) Each person who receives in the U.S. currency or other monetary instruments in an aggregate amount exceeding $10,000 at one time which have been transported, mailed, or shipped to such person from any place outside the United States with respect to which a report has not been filed under paragraph (a) of this section, whether or not required to be filed thereunder, *shall make a report thereof, stating the amount, the date of receipt, the form of monetary instruments, and the person from whom received.*
(c) This section shall not require reports by:
....
(2) A bank, a foreign bank, or a broker or dealer in securities, in respect to currency or other monetary instruments mailed or shipped through the postal service or by common carrier....
*Id.* (emphasis added).

7. Section 103.27 provides in pertinent part that:
(b)(1) A report required by § 103.23(a) shall be filed at the time of entry into the United States or at the time of departure, mailing or shipping from the United States, unless otherwise specified by the Commissioner of Customs.
(2) A report required by § 103.23(b) shall be filed within 15 days after receipt of the currency or other monetary instruments.
(3) All reports required by § 103.23 shall be filed with the Customs officer in charge at any port of entry or departure, or as otherwise specified by the Commissioner of Customs....
....
(d) *Reports required by* § 103.22, *§ 103.23* or § 103.24 *shall be filed on forms prescribed by the Secretary. All information called for in such forms shall be furnished.*
(e).... Forms to be used in making the reports required by § 103.23 may be obtained from the U.S. Customs Service.
*Id.* (emphasis added).

8. Section 553 provides in pertinent part that:
(b) General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include—
(1) a statement of the time, place, and nature of public rule making proceedings;
(2) reference to the legal authority under which the rule is proposed; and
(3) either the terms or substance of the proposed rule or a description of the subjects and issues involved.
Except when notice or hearing is required by statute, *this subsection does not apply—*
(A) *to interpretative rules,* general statements of policy, or rules of agency organization, procedure, or practice[.]

·          ·          ·          ·          ·

(c) After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments with or without opportunity for oral presentation. After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose....
*Id.* (emphasis added).

*for Auto Safety v. National Highway Traffic Safety Admin.*, 710 F.2d 842, 846 (D.C.Cir. 1983); *Batterton v. Marshall*, 648 F.2d 694, 700 (D.C.Cir.1980)).

■ By its terms, in any event, section 553 does not apply to "interpretative rules." See § 553(b), *supra* note 8. The relevant distinction in this connection is between legislative and interpretative rules. As we recently explained:

> There are two types of rules, legislative and interpretive. Legislative rules are those that "create new law, rights, or duties, in what amounts to a legislative act." *White [v. Shalala*, 7 F.3d 296, 303 (2d Cir.1993) ]. Legislative rules have the force of law. *See Batterton v. Francis*, 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977). Interpretive rules, on the other hand, do not create rights, but merely "clarify an existing statute or regulation." *White*, 7 F.3d at 303. Since they only clarify existing law, interpretive rules need not go through notice and comment. 5 U.S.C. § 553(b)(3)(A). These rules do not have force of law, though they are entitled to deference from the courts. *Batterton*, 432 U.S. at 425 n. 9, 97 S.Ct. at 2405 n. 9.

*New York City Employees' Retirement Sys. v. S.E.C.*, 45 F.3d 7, 12 (2d Cir.1995); *see also Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 142 n. 2 (2d Cir.1994); I *Treatise* § 6.3, at 233–34.

"[A]n agency has the power to issue binding legislative rules only if and to the extent Congress has authorized it to do so." I *Treatise* § 6.3, at 234. In addition:

> [A] legislative rule can impose distinct obligations on members of the public in addition to those imposed by statute, as long as the rule is within the scope of rulemaking authority conferred on the agency by statute. By contrast, an interpretative rule cannot impose obligations on citizens that exceed those fairly attributable to Congress through the process of statutory interpretation.

*Id.*

■ The regulations implementing the report of currency transports exceeding $10,-000 mandated by 31 U.S.C. § 5316, *see supra* note 2, clearly result from authority delegated by Congress and consequently constitute legislative rules. Thus, 31 C.F.R. § 103.23(a) and (b), *see supra* note 6, which largely tracks the language of the statute, and the instructions given at 31 C.F.R. § 103.27, *see supra* note 7, pertaining to how to obtain forms and when and where they should be filed, and specifying that all information called for therein must be provided, unquestionably pass muster under the test articulated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Chevron specifies that an agency's interpretation of a statute in a legislative rule is binding on a court if the interpretation is a "permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2782. These regulations were properly promulgated under the APA, and Yuzary does not contend otherwise.

■ Federal courts are bound by an agency's interpretation of its own legislative rule unless the interpretation is inconsistent with the legislative rule, violates the constitution or a federal statute, or is plainly erroneous. *See Stinson v. United States*, — U.S. —, —, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S, 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *I Treatise* § 6.10. Form 4790's implicit interpretation of 31 C.F.R. § 103.27(a) that transporters of large sums of currency must report their amount is consistent with the rule that such person must "make a report thereof," does not violate the constitution or a federal statute (indeed, it is expressly authorized by § 5316(b)), and is not plainly or otherwise erroneous.

■ We do not regard the fact that subsection (b) of § 103.23 elaborates upon the contents of the reports to be filed thereunder, while subsection (a) does not, *see supra* note 6, as undermining this conclusion. This variation renders § 103.23(a), at worst, ambiguous with respect to the requirement that amounts be reported, and it is the proper function of interpretative rules to clarify ambiguities. *See Rocky Mountain Helicopters, Inc. v. Federal Aviation Admin.*, 971 F.2d

544, 546–47 (10th Cir.1992) ("A rule is interpretive if it is promulgated by an agency having authority to issue substantive rules and if it attempts to clarify an existing rule but does not change existing law, policy, or practice.") (citing *Knutzen v. Eben Ezer Lutheran Hous. Ctr.*, 815 F.2d 1343, 1351 n. 6 (10th Cir.1987)).

Although not addressing the issue explicitly in terms of the distinction between legislative and interpretative rules, the sparse case authority that addresses Form 4790 generally supports our conclusion regarding its legitimacy. In *United States v. Ibarra–Alcarez*, 830 F.2d 968 (9th Cir.1987), the defendants departed the United States with more than $10,000 in currency without reporting that fact or filing Form 4790. They argued on appeal that "Form 4790 prescribes a legislative rule having the force of law which must be subject to the notice and comment requirements of section 553." 830 F.2d at 972. The Ninth Circuit rejected this contention, holding that:

> Form 4790 does not impose a duty not already required by regulations contained in 31 C.F.R. §§ 103.23(a) and 103.2[7](b). Form 4790 is simply a piece of paper upon which the report of the transportation of currency required by 31 U.S.C. § 5316(a) is made. The information called for on Form 4790 is limited to the identification of the person reporting and the amount of currency being transported.... The Secretary of the Treasury was not required to publish Form 4790 because it does not contain a statement implementing, interpreting, or prescribing a law, policy, or procedure not already defined in published regulations.

830 F.2d at 972.

The same challenge to the validity of the promulgation of Form 4790 was made in *United States v. Palzer*, 745 F.2d 1350 (11th Cir.1984). The Eleventh Circuit declined to resolve the issue, *see id.* at 1357 n. 15, concluding that Palzer's failure to report the fact that he had transported the statutorily specified amount of currency into the United States sufficed to charge a criminal offense under the pertinent statute and regulations without reference to Form 4790. *See id.* at 1357–59. The court added that: "We express no view on the possible operation of the statute, regulations, and forms in a case in which an individual reported the fact that he was carrying more than $5,000 [the triggering amount at the time] into the country, but refused to provide other information required on Form 4790." *Id.* at 1359 n. 19.

*United States v. Lagesse*, Criminal No. 83–61–1, slip op. (D.Vt. June 18, 1984), rejected a challenge to the promulgation of Form 4790, stating that:

> There is no merit in this argument. The defendant does not deny that the Secretary actually prescribed [Form 4790]. 31 C.F.R. § 103.[27(d)] clearly incorporates the form's requirements by reference. Defendant implies that incorporation by reference is insufficient and that if the regulations do not specify the information to be provided, then the forms prescribed must be promulgated by means of notice and comment procedure under the Administrative Procedure Act, 5 U.S.C. § 553. There is no indication, however, that the monetary information form is a "rule" within the meaning of 5 U.S.C. § 551(4), therefore the requirements of 5 U.S.C. § 553 do not apply. 31 C.F.R. § 103.[27(e)] satisfies the APA's publication requirement, 5 U.S.C. § 552(a)(1)(C), and therefore [the form] was properly promulgated under the APA.

*Lagesse*, slip op. at 7–8 (footnote omitted).[9]

Yuzary points to *United States v. $200,000 in United States Currency*, 590 F.Supp. 866

---

9. Yuzary asserts that there is no "reported case" in which a defendant has been charged with failure to file an *accurate* report on Form 4790 (as distinguished from total failure to file the form), purportedly buttressing his claim that the crime charged in this case is a "prosecutorial invention." In *Lagesse*, admittedly an unreported case, the defendant was indicted for listing $30,000 as the amount on a Form 4790 report when he was carrying $47,000. *See* slip op. at 3. In *United States v. Nakashian*, 820 F.2d 549 (2d Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 392 (1987), the defendant was charged with conspiracies to defraud the United States in violation of 18 U.S.C. § 371 and to make false statements in violation of 18 U.S.C. § 1001 as a result of filing a false Form 4790. *See id.* at 550–51.

(S.D.Fla.1984), a civil forfeiture proceeding which ruled that Form 4790 was not properly promulgated. *Id.* at 872–73. The case involved the same defendant, Lewis Palzer, and transaction that were the subject of the criminal appeal some months later in *Palzer.* The Eleventh Circuit did not see fit in *Palzer* to adopt the position expressed in *$200,000,* and we are not persuaded by *$200,000* in light of the views expressed earlier in this opinion.

Yuzary also invokes *United States v. Reinis,* 794 F.2d 506 (9th Cir.1986). *Reinis* ruled that Form 4789, which required the treatment of multiple transactions on the same day as a single transaction for purposes of reporting deposits in excess of $10,000, was invalid because the form was not promulgated in accordance with the requirements of the APA. The Ninth Circuit explicitly distinguished *Reinis* in *Ibarra–Alcarez,* however, pointing out that:

> We reversed the conviction in *Reinis* on the ground that the instructions on Currency Transaction Reporting Form 4789 could not be enforced because they imposed duties upon banks not contained in existing regulations. *Id.* at 508.
>
> Form 4790 does not impose a duty not already required by regulations contained in 31 C.F.R. §§ 103.23(a) and 103.2[7](b).

*Ibarra–Alcarez,* 830 F.2d at 972; *see also United States v. Bowers,* 920 F.2d 220, 222 n. 2 (4th Cir.1990) (*Reinis* "involve[d] [an] unpublished rule[ ] that imposed [a] substantive obligation[ ] beyond [that] created by the statute itself.").

We conclude that Form 4790 was not required to be promulgated via the procedures for notice and comment specified in 5 U.S.C. § 553.[10] Yuzary was therefore properly convicted under count one for violating 31 U.S.C. §§ 5316 and 5322.

*B. Yuzary's Remaining Contentions.*

■ In view of our determination that Yuzary was properly required to file Form 4790, his false statement therein plainly pertained to a "matter within the jurisdiction of" Customs within the meaning of 18 U.S.C. § 1001, and he was properly convicted on count two under that statute. We reject as frivolous Yuzary's claim that Form 4790 is ambiguous because, while requiring that the "amount" of transported currency be divulged, it does not specify that the total or exact amount must be disclosed. As to the government's summation, " '[t]he prosecutor [wa]s entitled to comment on [Yuzary's] failure ... to support his own factual theories with witnesses.' " *United States v. Barnes,* 604 F.2d 121, 148 (2d Cir.1979) (quoting *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.), *cert. denied,* 434 U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977) (citations omitted)), *cert. denied,* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980); *see also United States v. Rosa,* 11 F.3d 315, 342–43 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1565, 1864, 128 L.Ed.2d 211, 485 (1994).

### Conclusion

The judgment of the district court is affirmed.

---

**10.** In addition to compliance with 5 U.S.C. § 553, Yuzary also claims that Form 4790 was required to be published in the Federal Register in accordance with 5 U.S.C. § 552(a)(1), which requires such publication in the case of "substantive rules of general applicability adopted as authorized by law." § 552(a)(1)(D). Whether or not Form 4790 falls within this provision, § 552(a) specifies that "to the extent that a person has actual and timely notice of the terms thereof," that person may be "adversely affected by ... a matter required to be published in the Federal Register and not so published." By the time Yuzary made the false entry on Form 4790 that resulted in this criminal proceeding, the existence and requirements of Form 4790 had clearly been brought to his attention by the Customs officials on the scene at Kennedy. Further, Yuzary arrived at Kennedy with a letter from his attorney addressed precisely to the situation that he encountered there, clearly indicating foreknowledge of the reporting requirement.