[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13315
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20741-WJZ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DMITRY O. SEREGIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 5, 2014)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Dmitry Seregin appeals his conviction under 8 U.S.C. § 1001(a)(2) for making a false statement on U.S. Customs and Border Protection (CBP) Form 6059B (declaration form) when he failed to declare that he was bringing firearms parts into the United States.  Seregin challenges the sufficiency of the evidence, as well as several evidentiary rulings.  After review, we affirm.

I.

On March 26, 2012, Seregin was returning to Miami from a trip to Russia. In his luggage he was bringing back 119 firearms parts to add to his gun collection in the United States.  Before landing Seregin received a customs declaration form. On the form, Seregin left blank question 15, which asked:

> Residents – the total value of all goods, including commercial merchandise I/we have purchased or acquired abroad, (including gifts for someone else, but not items mailed to the U.S.) and am/are bringing to the U.S. is: _____

At the Miami Airport, Seregin was inspected by a CBP officer who discovered the 119 firearms parts.  The CBP officer then took Seregin to a private room for further inspection and questioning.  At this point the CBP officers also discovered that Seregin was carrying $9,998 in currency, which was $2 under the $10,000 limit noted on the declaration form.  The CBP officers returned the currency to Seregin, but seized the firearms parts.  Seregin was later charged in a two-count indictment with smuggling goods into the United States, in violation of

2

18 U.S.C. § 545, and making a fraudulent statement to the U.S. Department of Homeland Security, in violation of 18 U.S.C. § 1001(a)(2).

Seregin pleaded not guilty.  At trial, in addition to evidence of the seizure at the Miami airport, the government presented evidence, over Seregin's objection, about another encounter he had had with CBP.  During his airport interview with the CBP officers, one of the agents noticed that Seregin had a "lookout" in the CBP computer system.  A lookout means that a person has had a previous encounter with CBP.  Seregin's previous encounter occurred when he attempted to mail a gun part to Russia two months before he was stopped at the airport.  Seregin misrepresented the contents of the package on the postal form, saying it was an "airsoft stock" valued at $150, when it was a rifle stock for which he had paid $650.  On March 7, 2012—a few weeks before Seregin's return flight from Moscow—the CBP sent Seregin a letter notifying him that they had seized the package.  The letter said that the shipment was not registered and did not have a Department of State license for exportation, as was required for arms and munitions articles of war.  In contrast to Seregin's description on the postal form, the letter described the gun part as a rifle stock and valued it at $1,100.

Seregin chose to testify at trial, explaining that he was born in Russia and is a naturalized citizen of the United States.  He said that he works in real estate and exports cars.  As a hobby, Seregin collects items from World War II, including

firearms.  In Florida, where he lives, he has around 70 guns, mostly antiques. Seregin regularly travels internationally, including eleven international flights and more than 30 trips on his boat.

In his defense, Seregin testified that he bought the firearms parts while he was still living in Russia in the 1990s, just after the Soviet Union disintegrated. All together he said he paid about $100 for them.  When he first came to the United States, he left these parts in his mother's apartment in Russia.  Prior to his 2012 trip to Russia, he claims he had never brought any firearms parts with him to the United States.  He testified that he thought question 15 on the declaration form was asking only for the value of any commercial goods or anything he bought on his overseas trip.  Because he had not purchased the firearms parts on his recent trip, Seregin said he did not declare them.

The jury found Seregin not guilty of smuggling goods, but guilty of falsely stating on the customs declaration form that he was not traveling to the United States with any goods of value when he was in fact traveling with the 119 firearms parts.  After moving unsuccessfully for a judgment of acquittal or a new trial, Seregin filed this appeal.

II.

A.

4

Seregin first challenges the sufficiency of the evidence to support his conviction. We review de novo the denial of a challenge to the sufficiency of the evidence. United States v. Gamory, 635 F.3d 480, 497 (11th Cir. 2011). In considering a preserved sufficiency argument, we view the evidence in the light most favorable to the government, and interpret all inferences and credibility choices by the jury in a manner that supports the verdict. United States v. Williams, 390 F.3d 1319, 1323 (11th Cir. 2004). A jury is free to choose among reasonable interpretations of the evidence and we will affirm a conviction so long as a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. at 1323–24.

Federal law prohibits a person from "knowingly and willfully . . . mak[ing] any materially false, fictitious, or fraudulent statement or representation" with respect to any matter within the jurisdiction of the government of the United States. 18 U.S.C. § 1001(a)(2). A conviction under § 1001(a)(2) requires proof of five elements: (1) a statement, (2) falsity, (3) materiality, (4) specific intent to mislead, and (5) agency jurisdiction. United States v. Boffil-Rivera, 607 F.3d 736, 740 (11th Cir. 2010).

Seregin challenges whether there was sufficient evidence as to the fourth element: whether he had the specific intent to mislead. The specific intent required by § 1001 is the "intent to deceive by making a false or fraudulent

5

statement." United States v. Dothard, 666 F.2d 498, 503 (11th Cir. 1982); see also

United States v. Mills, 138 F.3d 928, 936 n.8 (11th Cir. 1998) (explaining that

"[t]he jury just needed to find that [the defendant] knew the statements were false

when she wrote them and that she meant to write them down" to convict her under

§ 1001).

Drawing all inferences in the government's favor, the evidence was

sufficient for a reasonable juror to find that Seregin intentionally omitted the

firearms parts on his declaration form.  A reasonable juror could have concluded

based on the plain language of the form that a traveler would understand that he

had to declare firearms parts worth hundreds of dollars acquired abroad.  Question

15 specifically asks for the "value of all goods . . . acquired abroad."  Seregin also

signed the form under the bold, all-caps statement: "I have read the important

information on the reverse side of this form and have made a truthful declaration."

On the reverse side of the form, directly under the title "Important Information," it

says "U.S. Residents – Declare all articles that you have acquired abroad and are

bringing into the United States."

The jury's verdict was further supported by Seregin's international travel

experience and the fact that he exports cars for a living.  Seregin's sophisticated

understanding of question 13 on the declaration form—as evidenced by his

admission that he intentionally carried $9,998 to avoid triggering the $10,000

threshold—could also lead a reasonable juror to infer that Seregin possessed a basic understanding of the declaration form's requirements. Finally, although Seregin testified that he misunderstood the form, the jury was entitled to find that he was not credible, and in fact could have used Seregin's testimony as evidence of his guilt. Williams, 390 F.3d at 1326 ("Where some corroborative evidence of guilt exists for the charged offense . . . and the defendant takes the stand in her own defense, the Defendant's testimony, denying guilt, may establish, by itself, elements of the offense.").

For these reasons, we reject Seregin's challenge to the sufficiency of the evidence.

## B.

On appeal Seregin raises an additional challenge to his conviction that he did not raise below. Although we generally review de novo the denial of a motion for judgment of acquittal, Gamory, 635 F.3d at 497, arguments not raised below are reviewed for plain error, see United States v. Hurn, 368 F.3d 1359, 1368 (11th Cir. 2004). To establish plain error, a defendant must show (1) an error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732–37, 113 S. Ct. 1770, 1776–79 (1993).

Seregin argues that because the value of the firearms parts in Russia was less than $800, he was permitted to make, and did make, an oral declaration under 19 C.F.R. § 148.12(b)(1)(i)(A), instead of a written declaration.  This regulation permits arriving U.S. residents to make an oral declaration "if [t]he aggregate fair retail value in the country of acquisition of all accompanying articles acquired abroad by him . . . does not exceed $800."  19 C.F.R. § 148.12(b)(1)(i)(A).  As evidence of his oral declaration, Seregin points to (1) his answers to the CBP's questions that the bag was his, that he packed the bag, and that the firearms parts were his, and (2) his estimation that the parts would be worth between $400 and $500 in the United States, which was made in response to questions asked by the third federal agent he spoke to at the airport.

Our review of the record shows no error, because Seregin did not make an oral declaration.  Neither the regulation, nor the parties, provide any clear authority for how an oral declaration must be made under this regulation.  But we need not decide the limits of what the regulation allows, because it is clear on the facts of this case that Seregin did not make one.  Seregin did not declare the firearms parts at immigration or when he first met a CBP officer.  And although he responded to questions about whether the bag and the firearms parts belonged to him, it is a stretch to call that a declaration, especially when he did not provide his valuation estimate that he relies on until he was speaking to a third federal agent in customs.

8

Seregin's lack of a timely, affirmative oral statement contrasts with the case he relies on in which the defendant's unrebutted testimony was that he "told the Customs official that he had 'alcohol and tobacco products' to declare." United States v. 100 Cuban Cigars, 35 F. Supp. 2d 405, 408 (E.D. Pa. 1999).

Because Seregin has not made a showing of plain error, this challenge to his conviction fails.

## III.

Seregin also challenges a number of evidentiary rulings. We review a district court's evidentiary rulings, including its admission of prior crimes or bad acts under Rule 404(b), for abuse of discretion. United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008). Even if an evidentiary ruling constitutes an abuse of discretion, however, we will not reverse if the error was harmless. United States v. Bradley, 644 F.3d 1213, 1270 (11th Cir. 2011). A "nonconstitutional error will be harmless unless the court concludes from the record as a whole that the error may have had a 'substantial influence' on the outcome of the proceeding." Id. (quotation marks omitted). The exclusion of relevant evidence under Rule 403 is an extraordinary remedy that "should be applied sparingly." United States v. Cole, 755 F.2d 748, 766 (11th Cir. 1985). The "major function [of Rule 403] is limited to excluding matter of scant or cumulative probative force, dragged in by the heels

for the sake of its prejudicial effect." United States v. McRae, 593 F.2d 700, 707 (5th Cir. 1979).[1]

A.

Rule 404(b) of the Federal Rules of Evidence provides that evidence of a wrong or act beyond the charged offense may be admissible to prove, in part, intent, knowledge, absence of mistake, or lack of accident. In order to admit evidence under Rule 404(b), three conditions must be met: (1) the evidence must be relevant to an issue other than the defendant's character; (2) the evidence must be sufficient for a jury to find the defendant committed the extrinsic act; and (3) the probative value of the evidence must not be substantially outweighed by its undue prejudice. United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007); see also Fed. R. Evid. 403.

Seregin first challenges the district court's admission of evidence regarding the CBP's seizure of the gun part Seregin attempted to mail to Russia two months before he was stopped at the Miami Airport. We reject his argument and conclude that the three conditions of Rule 404(b) were met in this case. First, Seregin's main defense was that he made a mistake and did not know he had to declare the firearms parts. As a result, Seregin's knowledge of customs rules, particularly

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. Id. at 1209.

regarding firearms parts, was relevant to whether his defense was credible. Fed. R. Evid. 404(b)(2); see also United States v. Satterfield, 644 F.2d 1092, 1094 (5th Cir. 1981) (finding evidence that defendant had previously attempted to enter the United States with unreported currency was permissible under Rule 404(b) because it "was relevant to show that [he] knew of the reporting requirement and intended to violate the statute by failing to report currency in his possession in excess of $5000"). Second, Seregin's testimony and the CBP documents admitted at trial are sufficient to establish that the act occurred.

Third, the record does not show that the probative value of this evidence outweighed its prejudice. The two occurrences were similar in that they both involved moving firearms parts between Russia and the United States, and they occurred very close in time. Edouard, 485 F.3d at 1345 (noting in balancing the probative value against potential unfair prejudice that the "[f]actors to be considered include whether it appeared at the commencement of trial that the defendant would contest the issue of intent, the overall similarity of the charged and extrinsic offenses, and the temporal proximity between the charged and extrinsic offenses.").[2] Given that Seregin's knowledge, intent, and lack of mistake

---

[2] The similarities between Seregin's two acts differentiates this case from United States v. Mills, 138 F.3d 928 (11th Cir. 1998), on which he relies. In Mills, one of the defendants was alleged to have falsified passenger manifests for a corporate plane to hide the fact that she was using it for personal use. Id. at 934. This Court found error in the admission of other evidence showing that on another occasion this defendant had falsified a customs declaration to conceal jewelry she purchased abroad. Id. at 935–36. We found that the differences between concealing a jewelry

11

were contested, the government's need for this evidence was also great and weighed in favor of admission. United States v. Delgado, 56 F.3d 1357, 1366 (11th Cir. 1995) ("[T]he greater the government's need for evidence of intent, the more likely that the probative value will outweigh any possible prejudice." (citation omitted)). Because the record shows the three factors of Rule 404(b) favored admission, we find no abuse of discretion in admitting this evidence.

Next, Seregin challenges the district court's admission of testimony that there was a "lookout" on Seregin in the CBP system. At trial the agent explained that a "lookout" simply meant that a person had interacted with CBP for some reason in the past and that Seregin's lookout stemmed from the January 2012 rifle stock seizure. For the reasons above, this testimony also satisfies the Rule 404(b) requirements. Beyond that, Seregin did not show how this testimony was unduly prejudicial, particularly in light of the fact that he was acquitted of the separate, more serious charge of smuggling firearms. See Mills, 138 F.3d at 936 ("[T]he jury's not-guilty verdict on most of the falsification counts against [the defendant] implies that the jury's consideration was not tainted by evidence of the customs incident, or any inference from the incident that [the defendant] was a liar.").

---

purchase on her customs form and falsifying passenger manifests were "simply too great to make the customs incident relevant to [her] intent." Id. at 936. As a result, the only inference to be gained from the evidence was that the she was "disposed to lie to the government. . . because of [her] character." Id.

Finally, the record contradicts Seregin's assertion that the district court allowed the agent to testify that he lied to officers during his interview with them at the airport. Although the agent twice said Seregin was "untruthful" at some points in the interview, Seregin objected to these statements and the district court immediately sustained the objections. See United States v. House, 684 F.3d 1173, 1208 (11th Cir. 2012) ("[B]ecause the district court sustained [the defendant's] objection to the prosecutor's question immediately after making the comment at issue, it is unlikely that the jury perceived the comment as an endorsement of the government's position."). Seregin did not request any curative instruction and none was given. Even if there was any error in the failure to give a curative instruction, it was harmless as these two stray remarks did not have a "substantial influence" on the outcome of the trial. Bradley, 644 F.3d at 1270. There was a great deal of testimony about the interview both from the federal agents and Seregin himself, such that the jury, which acquitted him of the smuggling charge, could draw its own conclusions about whether Seregin was being truthful. See Mills, 138 F.3d at 936.

In sum, the district court did not abuse its discretion in allowing the evidence Seregin challenges as impermissible character evidence.

B.

Seregin also argues that the district court admitted hearsay evidence in violation of his Confrontation Clause rights under the Sixth Amendment when it admitted a U.S. Postal Service form entitled "Custody Receipt for Seized Property and Evidence" that contained an unidentified handwritten rifle stock valuation. The admission of permissible hearsay violates the Confrontation Clause if the statement was "testimonial." Crawford v. Washington, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004). We review de novo whether a statement was testimonial. United States v. Caraballo, 595 F.3d 1214, 1226 (11th Cir. 2010).

Testimonial statements are ones that a declarant "would reasonably expect to be used prosecutorially." United States v. Charles, 722 F.3d 1319, 1322 (11th Cir. 2013) (quotation marks and alterations omitted). In assessing whether a statement is testimonial in nature, we look "only at the primary purpose" of the questions that elicited the statement. Caraballo, 595 F.3d at 1229 (finding no Confrontation Clause violation created by biographical information recorded on an immigration form because it was a business record maintained for the purpose of tracking the entry of aliens, not for future prosecution). While the Supreme Court has not defined what a "testimonial statement" is, it has explained that business and public records are generally admissible absent confrontation "because—having been created for the administration of an entity's affairs and not for the purpose of

14

establishing or proving some fact at trial—they are not testimonial." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 324, 129 S. Ct. 2527, 2539–40 (2009).

Here, the custody receipt containing a valuation of the seized gun part is permissible hearsay that is not testimonial, and therefore its admission did not violate the Confrontation Clause. The receipt qualified as a public record under Fed. R. Evid. 803(8). As shown by the testimony of the record's custodian, the document, which is maintained in the normal course of CBP business, is a receipt "from one officer to another" of the property that was confiscated and in CBP's custody. Further, the custody receipt is not testimonial because its primary purpose is to document the seizure, identify the items seized, and the chain of custody of seized items. See Caraballo, 595 F.3d at 1229. As a result, the district court did not err in admitting this record.[3]

## C.

Lastly, we address Seregin's argument that even if none of his individual claims of evidentiary error warrant reversal, when viewed together they resulted in an unfair trial. Because we have found no error individually, there can be no

---

[3] We also note that Seregin testified that he paid $650 for the rifle stock, significantly more than the $150 valuation he reported on the postal form, and that he admitted that the $150 valuation was "not true and [he] paid more for it." The evidence therefore established that he undervalued the item regardless of whether the custody receipt's $1,100 estimate was accurate, suggesting that even if it was error to admit this evidence, it was harmless beyond a reasonable doubt. See Caraballo, 595 F.3d at 1229 n.1.

cumulative error.  <u>Gamory</u>, 635 F.3d at 497 ("Where there is no error or only a single error, there can be no cumulative error.").

V.

The evidence at trial was sufficient to support the jury's verdict and the evidentiary issues do not support reversal individually or cumulatively.  We therefore **AFFIRM.**